No. 86,243

STATE OF KANSAS, *Appellee*, v. MARTYN O. PRICE, *Appellant*.

61 P.3d 676

Review of the judgment of the Court of Appeals in *State v. Price*, 30 Kan. App. 2d 569, 43 P.3d 870 (2002).

Opinion filed January 24, 2003.

*Roger L. Falk*, of Law Office of Roger L. Falk, P.A., of Wichita, argued the cause and was on the briefs for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Richard A. Olmstead*, assistant district attorney, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Martyn O. Price was found guilty of one count of aggravated criminal sodomy and two counts of aggravated indecent liberties with a child following a jury trial. He was sentenced to a controlling term of 117 months. The Court of Appeals reversed his convictions and remanded for a new trial. *State v. Price*, 30 Kan. App. 2d 569, 43 P.3d 870 (2002). We granted the State's petition for review on the two issues that formed the basis for reversal of his convictions: (1) the district court's denial of the defendant's motion for an independent psychological evaluation of the victim (2) and the district court's refusal to admit under K.S.A. 60-447 specific instances of the defendant's good character through his character witnesses. We conclude that the district court did not err, reverse the decision of the Court of Appeals reversing the district court, and affirm the district court.

The parties concur in the following factual summary set forth in the Court of Appeals' opinion:

"The alleged victim is F.B., who is the stepdaughter of Price's stepson. Melissa is F.B.'s mother. F.B. has a stepbrother, L.B., who is 1 month older than F.B. Approximately once or twice a month, Price and his wife would babysit F.B. and her half brother (also L.B., but hereafter referred to as 'half brother'). Often, the children would spend the night.

"At the beginning of the 1999 school year, when F.B. was 7 years old, Melissa learned that one of F.B.'s friends was spreading a rumor that F.B. was having sex with a boy. Melissa confronted F.B., who became agitated and refused to discuss the issue in person. However, mother and daughter exchanged a series of letters in which F.B. described sexual activity with both her stepbrother, L.B., and Price.

"F.B. revealed that one night some years earlier when F.B. could not sleep, she saw a sexually explicit program on cable television. Sometime later, she asked L.B. to lick her vaginal area and to rub his penis on her genitals. Approximately a month later, she approached Price about engaging in the same behavior. F.B. said Price was initially hesitant, but capitulated when she begged him. F.B. also asked to touch Price's penis, which he allowed. One morning in 1999, F.B. told

Price she no longer wished to continue these acts; Price agreed, and the conduct ceased.

"Price emphatically denies ever participating in any of the alleged acts. Price does admit F.B. approached him requesting that he kiss her genitals, but he claims he refused the request and told her that those actions would be wrong. Price initially said he would have to inform his wife. However, when F.B. became upset and worried that Melissa would discover what happened, Price agreed not to tell anyone in exchange for F.B.'s promise not to ask him again.

"F.B.'s parents reported this activity to Social and Rehabilitation Services (SRS). Price was eventually charged, on an amended complaint, with one count of aggravated criminal sodomy in violation of K.S.A. 21-3506(a)(1) and two counts of aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A). While F.B. had claimed she began this sexual activity as early as age 3 or 4, the information only charged acts which occurred while F.B. was 7 years old, *i.e.*, those occurring between December 19, 1998, and December 19, 1999." 30 Kan. App. 2d at 570-71.

### (1) The district court's denial of defendant's motion for an independent psychological evaluation of the victim.

An accused is entitled to an independent psychological evaluation of the victim if he or she is able to establish compelling reasons for such an examination. *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979). The granting or denial of such an examination is entrusted to the sound discretion of the trial court. Only when the defendant is able to establish that the trial court abused its discretion will relief be granted. *State v. Rucker*, 267 Kan. 816, 821, 987 P.2d 1080 (1999).

Prior to trial, the defendant filed his motion requesting the examination of the victim identifying the following facts in support: (1) The victim first told her mother about the contact with the defendant through an exchange of written correspondence because the victim, then 7 years old, was uncomfortable discussing the matter with her mother personally; (2) the victim had initially learned about sexual contact through a television program and had since engaged in sexual contact with her step-brother; (3) the contact between the victim and her step-brother occurred before any alleged contact between the victim and the defendant; (4) the victim had told her friends she was having sex with someone other than the defendant, which caused the victim to be shunned by her friends; and (5) there was a pattern of deception by the victim.

In one of her letters to her mother, the victim wrote:

"I asked [Price] to lick my privates after the movies I watched. He did. Now I was three or four. I told you not face to face [meaning she did not want to discuss the matter in person]. I lie sometimes and I am a big lying ratty big old pig. I ask God very much to help me. I have bad problems with lying. I need help and I ask [stepbrother L.B.] at the same time."

During the hearing on the defendant's motion, the State argued that F.B.'s reference to herself as a liar in the letter exchange between her and her mother related to what F.B. had said to her friend, S.R., and did not amount to a showing that the victim lacked veracity. The victim explained the reference to herself as a liar during the preliminary hearing:

"Q. Do you state on that page that you're lying?
"A. I'm not lying about this. But I had been lying to, umm, my friend, my friend [S.R.], and that's why I put that. But I—I'm not—I'm not lying because of this matter."

The State's questioning of the victim during the preliminary hearing established that the victim knew the difference between the truth and a lie:

"Q. Now, [F.B.], do you know the difference between the truth and a lie?
"A. Yes."

The defendant's cross-examination of F.B. was more extensive on this point:

"Q. Okay. Do you know the truth—I mean, do you know the difference between a truth and a lie?
"A. Yes.
"Q. What's the truth?
"A. Umm, it's when you tell the facts. When you say what really, really happened or that you really, really did this, instead of blaming it on someone else. And a lie is saying he did it and I didn't. You know, whatever the circumstance is.
"Q. Okay. What do you think a lie is?
"A. Umm, accusing someone or, umm, when you did something or saying that you did something even though you didn't or it's basically not being—not being—hmmm.
. . . .
"Q. What about make-believe; is that the truth or a lie?
"A. It's neither. It's not like—it's not lying, because it is—it's a story. Sometimes. And so it's not like saying this really happened. But it's—

. . . .

"Q. So, in that paper you have before you, when you say you're a big liar, you're saying that you—you're a big liar because you lied to [S.R.]?

"A. Yes.

"Q. Okay. You're not saying that you're a big liar because you lied about these things happening with Martyn.

"A. No."

After a full hearing, the defendant and the State were given the opportunity to argue, and both counsel relied upon *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979), as well as other Kansas cases discussed below. The district court, relying on *Gregg*, mentioned that "just the fact that she's given some inconsistent statements certainly isn't unusual. In fact, that's almost common for these types of cases." In discussing the defendant's contention that there was no corroboration of the charges, the court noted that it believed there was some corroboration although it might be limited. The trial court explained its reasoning:

"But the letters [between mother and victim] themselves provide some corroboration. The victim's relationship with the other children and the evidence that we have about that is some corroboration. So there is corroborating evidence out there, although it may be somewhat limited.

"There's been nothing presented showing that this victim has any particular history of mental or emotional problems. The defendant isn't exactly helpless in terms of his opportunity to defend against these charges. We have evidence of her actions with the step-brother that I'm sure is going to be brought out, the correspondence that were referred to, and the various statements that the victim says about her own credibility in that correspondence are all things that will come out. And it will be ultimately up to the jury to try to find the truth in this case.

"But in short, the Court simply finds that the defendant has not presented any compelling reason for such an examination in this case, and accordingly the Court denies the motion."

The Court of Appeals identified the following factors as supporting a conclusion that compelling reasons existed for such an examination: "F.B.'s initial disclosure of the abuse was in writing; F.B. admitted to prior sexual contact with her stepbrother; and in F.B.'s letters to her mother, F.B. referred to herself as a liar." 30 Kan. App. 2d 574. The Court of Appeals pointed out that District Judge Malone denied the motion for examination while Judge Bribiesca, who presided at trial noted it was "problematic" that F.B.

had not been evaluated. 30 Kan. App. 2d at 577. The record, however, establishes that all matters deemed important by the defendant were presented to Judge Malone and that nothing prevented the defendant from presenting additional evidence on the same motion to Judge Bribiesca. Thus, the fact that the motion was denied by a judge who did not preside at trial provides no support for the defendant's position.

In reversing the district court, the Court of Appeals relies upon the fact that F.B. had called her own credibility into question and the lack of any corroborating evidence. These two factors, concluded the Court of Appeals, were sufficient to warrant a finding that the trial court abused its discretion in refusing to order a psychological evaluation of F.B. 30 Kan. App. 2d at 577-78. The Court of Appeals also expressed concern that the victim had initiated the contact with the defendant, concluding that "such behavior is very unusual and certainly merits further investigation." 30 Kan. App. 2d at 576.

The standard of review of a defendant's motion for a psychological examination of a complaining witness in a sex crime case is whether the trial court abused its discretion in denying such request. *State v. Rucker*, 267 Kan. 816, 821, 987 P.2d 1080 (1999). Discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Saiz*, 269 Kan. 657, 667, 7 P.3d 1214 (2000). Thus, whether an error occurred in the denial of a request for an independent psychological examination will depend upon a totality of the circumstances in the case and will be judged on appeal not anew but upon the appellate court's determination of whether the trial court has abused its discretion.

Recognizing that an examination of the kind requested can have adverse effects on a victim and further recognizing that those adverse effects are warranted where an accused is able to demonstrate compelling reasons for the examination, this court has provided guidance for trial courts faced with the question of whether to grant or deny an accused's request for such an examination.

In *Gregg*, this court determined that the decision to grant a motion to compel a psychiatric examination of a complaining wit-

ness in a sex crime case was within the discretion of the trial court upon the showing of compelling reasons. 226 Kan. at 487-90. In its conclusion that the trial court did not abuse its discretion by denying the defendant's motion for a psychiatric examination of the victim, *Gregg* identified several factors important in such a decision:

"The motion for the examination, made the day before trial, rested on such factors as the child's age, the seriousness of the crime, and the lack of corroborating evidence (in fact, her testimony was not wholly uncorroborated). No facts were stated or evidence introduced as to the child's mental instability, lack of veracity, similar charges against other men proven to be false, or any other reason why this particular child should be required to submit to such an examination. The motion was clearly a fishing expedition embarked upon in the hope something damaging and admissible in the trial would be unearthed. The trial court and prosecutor subsequently questioned the child about her understanding of telling the truth and nothing unusual surfaced. Defense counsel was offered the opportunity to question the child, but declined. At trial the cross-examination of the child was brief." 226 Kan. at 490.

*Gregg* suggests that the necessity for ordering a psychiatric evaluation will only arise in cases where there is little, if any, corroborating evidence supporting the complaining witness' allegations. 226 Kan. at 489. *Gregg* further suggests that it is rarely an abuse of discretion for a trial court to fail to order a psychiatric examination. 226 Kan. at 489.

Thus, *Gregg* established that in addition to whether there exists corroborating evidence of the victim's account, the following additional factors should be considered in determining whether compelling reasons exist for a psychological evaluation: (1) whether the victim demonstrates mental instability, (2) whether the victim demonstrates a lack of veracity, (3) whether similar charges by the victim against others are proven to be false, (4) whether the defendant's motion for a psychological evaluation of the victim appeared to be a fishing expedition, (5) whether anything unusual results following the questioning of the victims understanding of telling the truth, and (6) whether there are any other reasons why the victim should be evaluated. *Gregg* has become the guide in Kansas for evaluating whether a motion for examination should be granted. See *State v. McIntosh*, 274 Kan. 939, 942-43, 58 P.3d 716 (2002).

In *State v. Blackmore*, 15 Kan. App. 2d 539, 811 P.2d 54 (1991), the Court of Appeals rejected the defendant's argument that the trial court erred in denying his motion to order an independent psychiatric examination of the complaining witness. The complaining witness had had behavior problems, requiring treatment at a mental health center: "Jacob's problematic behavior included hyperactivity, sleeplessness, bowel movements in his pants, and gagging himself at night until he vomited. Jacob also experienced an episode of rectal bleeding from a tear which his grandmother attributed to constipation." 15 Kan. App. 2d at 540. A physical examination of the victim did not reveal any physical evidence of abuse. 15 Kan. App. 2d at 541. The court concluded with the following analysis:

"Not unlike *Gregg*, the record of testimony at trial contains no evidence that the complaining witness was mentally unstable or lacked veracity. There was no evidence that the complaining witness had made similar charges against other men that were proven to be false. While the complaining witness took medication as needed for earaches and asthma, there is no showing that the medication affected his veracity or mental stability. This evidence alone supports the trial court's denial and, while defendant advances other contentions regarding the examination, it cannot be said that the trial court abused its discretion." 15 Kan. App. 2d at 542.

*Blackmore* noted that the defendant failed to include a transcript of the preliminary hearing in the record on appeal. 15 Kan. App. 2d at 541. This transcript contained the testimony upon which the defendant's motion for the psychiatric examination rested. 15 Kan. App. 2d at 541. On review, the Supreme Court agreed with the Court of Appeals that this reason alone was sufficient to reject the defendant's argument. *State v. Blackmore*, 249 Kan. 668, 670, 822 P.2d 49 (1991).

*State v. Lavery*, 19 Kan. App. 2d 673, 877 P.2d 443 (1993), found that the district court did not abuse its discretion in denying the defendant's motion to compel the victim to undergo a psychiatric examination. 19 Kan. App. 2d at 676-78. The following reveals the court's reasoning:

"Lavery's motion contended that K.R. had been inappropriately exposed to sex and that she was using that knowledge to falsely accuse him. He presented evi-

dence that K.R. was unsupervised most of the summer, used foul language, was possibly sexually molested by Ronnie Forth, another individual in the neighborhood, and had told a false story about killers in the school basement to two neighborhood girls. The court also noted there was an episode of K.R. 'playing doctor' with other neighborhood children.

"In making its decision, the court reviewed all the testimony presented and found there was no evidence presented which would tend to indicate that K.R. was using any knowledge of sexual activity she may have gained through sexual conduct with Forth to fabricate an allegation against Lavery. The court stated the lack of supervision and use of vulgar language did not indicate any kind of mental aberration, flight of fancy, or a lack of truth or veracity. The court concluded that, taken individually or viewed as a whole, the evidence presented did not reach the 'compelling reason' standard set out in *Gregg*. [Citation omitted.]

. . . .

"In the instant case, there was no evidence indicating K.R.'s contact with Forth affected her mental stability or veracity. There was no evidence of similar charges by K.R. against other men proven to be false. There was one instance of K.R.'s telling a falsehood. However, the falsehood did not involve the subject matter of this case. Based on the compelling reason standard Lavery had to meet, the trial court's denial of his motion cannot be said to be an abuse of discretion." 19 Kan. App. 2d at 677.

The defendant attempts to distinguish *Lavery* by arguing that although the victim in that case did tell a fabrication, the fabrication did not relate to the subject matter of the trial. The defendant points out that in this present case, F.B.'s fabrication related to F.B.'s having had sex with someone. However, in this present case, although the victim's falsehood did relate to sex, the falsehood specifically related to something F.B. had told her friend, S.R., about contact with someone other than the defendant. The falsehood did not relate to anything she had said about the contact with the defendant.

*State v. Bourassa*, 28 Kan. App. 2d 161, 15 P.3d 835 (1999), found the following facts required the finding that the trial court abused its discretion in not granting the defendant's motion for a mental evaluation of the complaining victim:

"At the hearing on this motion, Bourassa's trial counsel explained to the district court that V.R. had been under psychological care at Prairie View in Newton, Kansas, and had accused her father of sexually molesting her. The judge was also told that V.R. had reportedly mutilated two kittens and had a tendency to soil herself. Counsel then stated:

'[T]he Court does not have the transcript of the preliminary hearing before it. One has been requested and ordered, but it has not yet been prepared by the court reporter. It was a preliminary hearing held in front of Judge Dewey that the victim of the rape, [V.R.], testified that the rape took place in the front seat of the van with her sister being in between herself and Charles Bourassa. The younger sister did not testify that she saw any sexual contact between Charles Bourassa and her older sister. Thank you.'

"It is unfortunate a transcript of V.R.'s testimony at the preliminary hearing was not available at the time the motion was heard. A reading of the transcript discloses other incongruous statements made by V.R. that supported Bourassa's requests." 28 Kan. App. 2d at 163.

The court rejected the comparison to *Gregg, Lavery,* and *Blackmore:*

"We believe all of the above cases are distinguishable from the case now before us. Bourassa's lawyer did proffer evidence of V.R.'s mental instability and that she had made a recent charge of her father sexually molesting her. The motions judge was told V.R. had mutilated two kittens the previous summer and she had a tendency to soil herself. The State acknowledged V.R. was taking the drug Prozac and currently undergoing mental health counseling for behavioral disorders. Bourassa's attorney also brought to the district court's attention that V.R. had testified at the preliminary hearing that the rape occurred in the van, notwithstanding that her sister did not testify as to anything improper happening in the van." 28 Kan. App. 2d at 166.

*Bourassa* also concluded the defendant's motion was neither a fishing expedition nor a tactic intended to harass or intimidate the victim. 28 Kan. App. 2d at 166.

After examining other Kansas cases as well as the *Gregg* factors and acknowledging that there were no published cases where an appellate court had found an abuse of discretion, *Bourassa* concluded that the defendant presented compelling reasons for the victim to be evaluated and that the district court abused its discretion in denying his motion. 28 Kan. App. 2d at 166-67.

The State distinguishes *Bourassa* by noting that F.B. was not undergoing treatment and was not taking medication for behavioral problems. Further, the State argues there was no evidence F.B. made charges against other men that were proven to be false, was mentally unstable, or displayed outward signs of physical aggression. The defendant argues that the victim in the present case did

show signs of sexual aggression which is similar to the physical aggression noted by the victim in *Bourassa.*

A comparison of the case we now consider with *Gregg* is instructive. As in *Gregg,* there is no evidence of the victim's mental instability. While there is evidence that F.B. was untruthful with her friend, S.R., the statement to S.R. did not relate to the contact with the defendant. *Lavery* dismissed the argument that one finding of untruthful conduct amounts to a compelling reason for an evaluation when the subject matter of the falsehood does not involve the subject matter of that case. Like *Gregg,* in this case there is no evidence that the victim made similar charges against others which were later proven to be false. *Gregg* provides for the consideration of any other reasons why the victim should be evaluated, and the Court of Appeals mentions the fact that the victim had initiated the contact with the defendant which was "very unusual and certainly merits further investigation." 30 Kan. App. 2d at 576. As in *Gregg,* nothing unusual resulted following the questioning of F.B.'s understanding of telling the truth.

Of the six factors set forth in *Gregg,* at least three are missing from this case and in accord with *Lavery,* the victim's untruthfulness in this case is arguably not the kind of veracity referenced in *Gregg.* The decision of the Court of Appeals is based primarily on two factors: the veracity of the victim and the lack of controverted evidence. While the court referred to other matters, there was a noted absence of critical factors listed in *Gregg.*

The standard to be applied is one of abuse of discretion. The test is not whether the appellate court based upon the facts presented at trial would have ordered such an examination; the standard is whether the trial court abused its discretion in failing to order the examination. We conclude, based on the totality of circumstances in this case, that the trial court's denial of the defendant's motion was not arbitrary, fanciful, or unreasonable. Reasonable persons may disagree about the district court's ruling which is another way of saying that abuse of discretion has not been established. The record fails to establish that compelling reasons existed for such an examination in this case. We reverse the Court of Appeals' decision and affirm the trial court's denial.

(2) The district court's refusal to admit under K.S.A. 60-447 specific instances of the defendant's good character through his character witnesses.

The trial court excluded upon the State's objection various character witnesses from testifying about specific instances of good conduct concerning the defendant's behavior around young children. Counsel for the defendant attempted to ask his character witness and the defendant's former wife, Rosaleen Ferreira, how the defendant acted around children. The State's objections were sustained. The defendant was able to elicit from his former wife that during the course of 40 years she had known the defendant she never saw him do anything to hurt a child. Counsel asked Ferreira whether she has seen any specific instances of behavior which support her opinion that the defendant is honest and kind. Again, the State's objection was sustained.

The Court of Appeals held the exclusion to be erroneous based upon its interpretation of K.S.A. 60-446 and K.S.A. 60-447. More specifically, the Court of Appeals concluded that K.S.A. 60-447(a), which according to its interpretation was inapplicable, did not apply to evidence tending to prove a good trait. In reaching this conclusion, the Court of Appeals relied upon this court's decisions in *State v. Kuone*, 243 Kan. 218, 231, 757 P.2d 389 (1988), and *State v. Sullivan & Sullivan*, 224 Kan. 110, 124, 578 P.2d 1108 (1978).

The question involves an interpretation of K.S.A. 60-447, which is a question of law subject to unlimited review. *State v. Zabrinas*, 271 Kan. 422, 442, 24 P.3d 77 (2001).

In 1963, the Kansas Legislature adopted K.S.A. 60-446 and K.S.A. 60-447, along with other rules of evidence. L. 1963, ch. 303. These rules were based upon the Uniform Rules of Evidence drafted by the National Conference of Commissioners on Uniform State Laws in 1953. See Uniform Rules of Evidence, Rules 46 and 47, p. 190 (1953). The two statutes we consider have remained the law in Kansas since their adoption.

K.S.A. 60-446 provides:

"When a person's character or a trait of his or her character is in issue, it may be proved by testimony in the form of opinion, evidence of reputation, or evidence

of specific instances of the person's conduct, subject, however, to the limitations of K.S.A. 60-447 and 60-448."

## K.S.A. 60-447 provides:

"Subject to K.S.A. 60-448 when a trait of a person's character is relevant as tending to prove conduct on a specified occasion, such trait may be proved in the same manner as provided by K.S.A. 60-446, except that (a) evidence of specific instances of conduct *other than evidence of conviction of a crime which tends to prove the trait to be bad* shall be inadmissible, and (b) in a criminal action evidence of a trait of an accused's character as tending to prove guilt or innocence of the offense charged, (i) may not be excluded by the judge under K.S.A. 60-445 if offered by the accused to prove innocence, and (ii) if offered by the prosecution to prove guilt, may be admitted only after the accused has introduced evidence of his or her good character." (Emphasis added.)

The preamble of K.S.A. 60-447 allows the admission of circumstantial evidence of how a person acted on a specified occasion. The preamble of K.S.A. 60-447 refers to K.S.A. 60-446, which permits evidence of a person's character or a trait of his or her character in the form of "opinion, evidence of reputation, or evidence of specific instances of the person's conduct." There are two exceptions in K.S.A. 60-447(a) and (b). Subsection (a) generally excepts from the permissive rule of K.S.A. 60-447 specific instances of conduct. However, the exception of subsection (a) is qualified by the emphasized language in the quotation above. The resolution to this case turns on the interpretation of the phrase "which tends to prove the trait to be bad." Does this phrase modify "conviction of a crime" or "evidence of specific instances of conduct?" We hold that the former is the correct interpretation of K.S.A. 60-447(a) and conclude that K.S.A. 60-447(a) excepts from the permissive rule of K.S.A. 60-447 evidence of specific instances of good conduct.

The Court of Appeals struggled with the language of K.S.A. 60-447, concluding that the only logical interpretation is that the legislature meant to exclude only those specific instances of conduct which tend to prove the trait to be bad. The Court of Appeals found that since the character trait at issue here is a good trait, K.S.A. 60-447(a) is inapplicable. 30 Kan. App. 2d at 584. As we interpret

both statutes, one approach is the legislative history of the two sections involved.

In this history, we find a clear indication of what the legislature intended the language should mean in its adoption of K.S.A. 60-446 and K.S.A. 60-447. The legislature adopted verbatim the Uniform Rules of Evidence, Rules 46 and 47. The official comments to Rule 46 and Rule 47 provide key insight into the intended meaning:

"This rule [Rule 46 (K.S.A. 60-446)] deals with the rather rare situations where character is an ultimate issue (*i.e.*, a fact necessary to liability, defense or damages) as contrasted with the use of character merely as circumstantial evidence of another fact. Instances of the former are the issue of character for chastity in seduction cases, and character for competence in wrongful discharge actions or in suits charging the master with employing an unfit fellow-servant. These are in contrast with the cases wherein character, *e.g.*, for negligence, is offered to show that the person probably acted negligently on a particular occasion. In the former situations where character is in issue it is necessary to prove it, and the danger of prejudice which comes from showing character by particular acts is outweighed by the necessity of ascertaining the fact of character. The suggested Rule is similar to the Model Code Rule 305, and (as to proof of particular acts) is supported by 1 Wigmore, Evidence, § 202-213, which gives a wide array of illustrations.

. . . .

"[Rule 47 (K.S.A. 60-447)] As contrasted to Rule 46 (character an issue) *this rule definitely requires rejection of evidence of specific behavior to prove a character trait except evidence of conviction of a crime.* As applied to criminal cases the rule accepts the common law in that it prevents the prosecution from producing evidence of the accused's bad character unless he has first introduced evidence of his good character. The admission or rejection of character evidence depends primarily on the court's conception of its relevancy. Like the Model Code Rules, this rule permits the prosecution after the defendant has produced evidence of his good character, to prove prior convictions as evidence of criminal propensity and likelihood of guilt." (Emphasis added.)

The Comments to the Uniform Rules of Evidence quoted above are substantially similar to the Comments in the November, 1961, Kansas Judicial Council Bulletin, "Recommendations as to Rules of Civil Procedure, Process, Rules of Evidence, and Limitations of Actions." See also *Hardesty v. Coastal Mart, Inc.*, 259 Kan. 645, 653-54, 915 P.2d 41 (1996) (quoting and endorsing Slough, *Other Vices, Other Crimes: An Evidentiary Dilemma*, 20 Kan. L. Rev. 411 [1972], for the proposition that the Kansas rules of evidence

are "patterned meticulously after the Uniform Rules of Evidence").

The legislative history is inconsistent with the Court of Appeals' interpretation that K.S.A. 60-447 renders inadmissible only "evidence of specific instances of conduct . . . which tend to prove the trait to be bad," but allows "evidence of a conviction of a crime." Legislative history rejects the Court of Appeals' conclusion in this case that the "legislature meant to exclude only those specific instances of conduct which tend to prove the trait to be bad" and that "[b]ecause the character trait at issue here is a good trait, 60-447(a) is inapplicable." 30 Kan. App. 2d at 583-84. In accordance with legislative history, the opposite conclusion is true: Evidence of specific behavior to prove a character trait except evidence of conviction of a crime is not admissible under K.S.A. 60-447(a).

This conclusion is supported by the weight of the following authorities: 1 Gard & Casad, Kansas Code of Civil Procedure Annotated, § 60-447 (3d ed. 1997); Barbara, Kansas Rules of Evidence, 4th ed. § 5.2 (1997). See 1 Strong *et al.*, McCormick on Evidence, § 191 (5th ed. 1999); Concannon, 2002 Annual Survey of Kansas Law, Kansas Bar Association, 175-76 (2002) (discussing the Court of Appeals' decision in the case we deal with).

While a number of Kansas appellate decisions have discussed the provisions of K.S.A. 60-446 and K.S.A. 60-447, with the exception of *State v. Sullivan & Sullivan*, no case deals directly with the issue we consider here. In *Sullivan,* a case relied on by the Court of Appeals, both defendants were charged with a number of criminal offenses. John Sullivan was convicted and sentenced on charges of felony murder, premeditated murder, and criminal injury to persons. He attempted to introduce evidence of his good character, but the trial court refused to allow John's employer to testify as to his good character. This court discussed K.S.A. 60-446, K.S.A. 60-445, and K.S.A. 60-447, concluding that the trial court erred. This court interpreted K.S.A. 60-447 to provide that "if a character trait is relevant, evidence of specific instances which tend to prove the trait may be introduced in a criminal action *if offered by the accused to prove innocence.*" 224 Kan. at 124.

*Sullivan* supports the defendant's interpretation of K.S.A. 60-447. The key for *Sullivan* lies in the italicized portion of the statute set forth above: "[i]f offered by the accused to prove innocence." *Sullivan* fails to deal with or analyze the effect of the precise statutory language giving rise to the dispute in this case—the language contained in K.S.A. 60-447(a). Moreover, the factual context of the error raised in *Sullivan* is not entirely clear. Given the legislative history set forth above, we reject *Sullivan's* reading of K.S.A. 60-447.

The other case relied upon by the Court of Appeals, which in turn relied upon *Sullivan*, is *State v. Kuone*, 243 Kan. 218, 757 P.2d 289 (1988). In a case involving aggravated criminal sodomy and indecent liberties against an 11-year-old mildly retarded girl, the defendant proffered favorable character evidence in the form of the opinion of lay witnesses as to the defendant's nonviolent nature. The trial court refused to admit the evidence, concluding that it lacked probative value. On appeal, we held that the trial court's refusal to admit the evidence was error. However, we also said that the "proffered testimony had no bearing on whether defendant committed the acts charged, and for that reason . . . was harmless." 243 Kan. at 233.

In *Kuone*, we stated that "[c]haracter testimony that would be relevant to disprove the charges, for example, would be that defendant had been around young girls frequently in situations where similar conduct could have occurred, but that the defendant had always behaved in an acceptable manner." 243 Kan. at 232-33. This was, as noted by the Court of Appeals, "exactly the type of evidence Price [defendant] sought to introduce." However, the facts in *Kuone* do not involve specific instances of good conduct. While its example, after setting forth the text of K.S.A. 60-447, lends support to the Court of Appeals' interpretation of K.S.A. 60-447, it is in the form of dicta, because that case does not analyze the text of the statute and simply does not deal with the question we must decide in this case. *Kuone*, in its example, addresses relevancy which, while a prerequisite to admission under K.S.A. 60-447, is not the key to understanding K.S.A. 60-447(a).

Several decisions of this court before and after *Sullivan,* while not directly on point, support the conclusion that K.S.A. 60-447(a) prohibits evidence of specific instances of conduct other than evidence of a conviction of a crime. *State v. Gregory,* 218 Kan. 180, 187, 88, 542 P.2d 1051 (1975) (" 'The effect of the general rule is to make opinion testimony and testimony of reputation available as proof of character which is circumstantially relevant, but to reject evidence of specific instances of conduct except evidence of convictions for crime. [Gard, Kansas Code of Civil Procedure, p. 438.]' "); *State v. Deavers,* 252 Kan. 149, 157-59, 843 P.2d 695 (1992); *State v. Arteaga,* 257 Kan. 874, 894, 896 P.2d 1035 (1995) ("To prove conduct on a specific occasion, evidence of specific instances of conduct are inadmissible other than evidence of a conviction of a crime which tends to prove the trait to be bad. K.S.A. 60-447."); *State v. Mason,* 208 Kan. 39, Syl. ¶ 1, 490 P.2d 418 (1971) ("Where self defense is an issue in a homicide case, evidence of the turbulent character of the deceased is admissible. Such evidence may consist of the general reputation of the deceased in the community, but specific instances of misconduct may be shown only by evidence of conviction of a crime.").

The legislative history, Kansas case law, and weight of authority considering this precise question in Kansas disagree with the Court of Appeals' decision in this case. We conclude that the provisions of K.S.A. 60-447(a) do not permit evidence of specific instances of conduct where a party offers evidence of a person's good character to prove his or her conduct was in accord with the person's character. The trial court properly excluded such evidence.

The Court of Appeals concluded that the two above trial errors, in the face of less than overwhelming evidence, denied the defendant a fair trial. Having concluded that no errors occurred, we reject the Court of Appeals' reversal of the defendant's convictions based on cumulative error.

We reverse the decision of the Court of Appeals reversing the trial court and affirm the trial court.