NOT DESIGNATED FOR PUBLICATION

No. 120,322

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RAYMOND LEWIS ROSS JR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed August 7, 2020. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Ellen H. Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.


PER CURIAM: Raymond Lewis Ross Jr. met R.H. in a trailer park in Salina. R.H. was a minor who had recently ran away from her placement facility. R.H. had a history of sexual abuse and drug use. R.H. alleged that for the next several days Ross would provide her with methamphetamine, have sex with her, and traffic her for sex with other men in exchange for money or drugs.

Ross was convicted of aggravated indecent liberties with a child, two counts of criminal sodomy, one count of indecent liberties with a child, and two counts of commercial sexual exploitation of a child. On appeal, Ross argues that the district court

1

erred by: (1) denying his motion for a psychological evaluation of R.H.; (2) admitting into evidence Ross' statements that he believed there was a conspiracy against him; (3) informing the jury that it was not a defense that he did not know R.H.'s age; and (4) placing "guilty" above "not guilty" on the verdict forms. Finally, Ross argues that if no single error warrants reversal, then the cumulative effect of multiple errors requires reversal. Finding no error, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In December 2016, R.H., who had just turned 15 years old at the time of the relevant events, was living in a home for adolescent survivors of sexual abuse. As part of a scheduled outing, R.H. went to the local public library. While at the library, she began to feel anxious. She left the library and encountered a friend from her time at a juvenile detention center. She asked her friend if he knew where she could get some drugs. R.H. started walking in the direction that her friend indicated.

Eventually, R.H. arrived at a trailer park where she met a man named Chris with whom she spent the evening smoking methamphetamine and having sex. She eventually left Chris and was walking through the trailer park when she heard cussing and screaming from another part of the trailer park. As R.H. walked past a couple who were yelling at each other the man, Ross, called R.H. over saying that she looked cold and that she could sit in his van to warm up.

R.H. got into the van and told Ross that she needed to make some money. Ross asked R.H. how old she was and R.H. replied that she was 18. Ross told R.H. that he could help her make some money and R.H. understood that Ross meant that she could earn money through prostitution. He presented her with a pair of earrings which she was later required to return to him when she was no longer having sex with him. He also indicated he could obtain methamphetamine. While in the van, Ross gave R.H. some

2

methamphetamine. R.H. told Ross that she needed to use the restroom and Ross said that he would take her to his friend's trailer and that she could use the restroom there.

Ross took R.H. to a trailer where R.H. met an older man with a glass eye. When they got to the trailer, all three of them smoked methamphetamine. Ross told the other man that he needed to use the backroom and took R.H. to a back bedroom. While in the bedroom Ross and R.H. had oral sex and vaginal sex. After having sex, Ross and R.H. returned to the living room.

Later, after smoking methamphetamine, Ross and R.H. left to go to Ross' mother's house. While at Ross' mother's house, Ross and R.H. went to an upstairs room and Ross indicated that he wanted R.H. to sexually gratify him through oral sex. R.H. did so.

Later, Ross said that he needed to go to get a part for the van. He took R.H. to his ex-wife's—Yolanda Payan—house and dropped her off. Ross later returned and said that he was going to take R.H. to meet his friend.

The owner of the house, Gene, met them outside. After going inside Ross, Gene, and R.H. began smoking methamphetamine. Ross and Gene began talking to each other and R.H. saw Gene give Ross a small baggie of methamphetamine and some cash. Gene told Ross, "I'll text you when I'm done" and Ross left. Gene told R.H. to orally stimulate his penis which she did. Then Gene and R.H. had vaginal sex. Afterword, Gene texted someone, "I'm done" and Ross returned.

Ross and R.H. returned to Payan's house where she had sex with Payan's adult son. Ross' daughter, Delilah Ross, was also present at Payan's home. Delilah and Payan talked to R.H. and R.H. told them that she had nowhere to go. She also told Payan that she did not want to be around Ross anymore because he was giving her drugs and having sex with her. Delilah offered R.H. a job babysitting her children. R.H. agreed. R.H. took a

3

shower and fell asleep and Delilah left for work. When R.H. woke up, there were two police officers standing over her. They had been called to the residence due to the neighbors reporting children crying incessantly. Delilah's twin girls, who were almost three years old, were found shut in a back laundry room, with a space heater on, naked and smelling of urine. This was six days after R.H. ran away from the library.

R.H. told the police that she was a runaway and 15 years old. The police took R.H. and Delilah's children away from the house. When R.H. arrived at the police station, the police began asking her questions about Delilah and her children. Eventually the police asked R.H. about what happened to her. R.H. informed the police what had happened over the last few days. The police took R.H. to the hospital where she was examined and pictures of her were taken. Later, in the presence of a juvenile intake employee, Delilah called her mother, Payan, who told Delilah that Ross had been pimping R.H. out.

Analysis of the samples taken at the hospital revealed that seminal fluid was present in the vaginal swabs that R.H. provided to the police. There was DNA present which was consistent with Ross and his son.

When questioned by police in a recorded interview, Ross admitted to knowing R.H., spending some time with her, and leaving her at Payan's house. But he generally denied any sexual contact with her.

The State ultimately charged Ross with one count of aggravated indecent liberties with a child, two counts of criminal sodomy, one count of indecent liberties with a child, and two counts of commercial sexual exploitation of a child. The jury found Ross guilty on all counts. The district court sentenced Ross to a controlling term of 244 months' imprisonment. Ross timely appeals.

Additional facts will be added as necessary.

4

Ross raises five issues on appeal. First, he argues that the district court erred by denying his motion to require R.H. to submit to a psychological evaluation. Second, he argues the district court erred by admitting evidence that he alleged there was a conspiracy against him. Third, he argues that the jury was improperly instructed and that his due process rights were violated by an erroneous instruction. Fourth, he argues the verdict forms improperly placed the "guilty" option over the "not guilty" option. Finally, he argues that even if no single error warrants reversal then the cumulative impact of multiple errors requires reversal.

*The district court did not err by denying Ross' motion for a psychological evaluation of the victim.*

For his first argument on appeal, Ross asserts that the district court erred when it denied his request to have R.H. undergo a psychological evaluation. Whether an accused is entitled to an independent psychological evaluation of the victim is within the sound discretion of the trial court. *State v. Price*, 275 Kan. 78, 80, 61 P.3d 676 (2003).

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The party asserting the district court abused its discretion bears the burden of proof. See *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

A defendant is entitled to an independent psychological evaluation of a victim in a sex crime case only if the defendant presents a compelling reason for such examination. *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979). To determine whether a

compelling reason exists, the district court should consider the following nonexhaustive factors:

> "'(1) whether there was corroborating evidence of the complaining witness' version of the facts, (2) whether the complaining witness demonstrates mental instability, (3) whether the complaining witness demonstrates a lack of veracity, (4) whether similar charges by the complaining witness against others are proven to be false, (5) whether the defendant's motion for a psychological evaluation of the complaining witness appears to be a fishing expedition, and (6) whether the complaining witness provides an unusual response when questioned about his or her understanding of what it means to tell the truth.'" *State v. McCune*, 299 Kan. 1216, 1231, 330 P.3d 1107 (2014) (quoting *State v. Berriozabal*, 291 Kan. 568, Syl. ¶ 5, 243 P.3d 352 [2010]).

Before trial, Ross moved for an expert psychological examination of R.H. The district court held a hearing on Ross' motion. At the hearing, Ross called Sarah Haldeman-Smith, a therapist at St. Francis Community Services, to testify about R.H.

Haldeman-Smith testified that R.H. was diagnosed with posttraumatic stress disorder (PTSD), a major depressive disorder, and a substance abuse disorder which was considered in remission. She also explained that she had not diagnosed R.H. with any psychotic issues, nor did she diagnose R.H. with schizophrenia. But Haldeman-Smith later noted that R.H. had self-reported a previous diagnosis of bipolar depression with psychotic features, however that claim was not verified by Haldeman-Smith. She also indicated that she had not noticed R.H. display any signs of delusional behavior or behavior that seemed disassociated from reality. Haldeman-Smith acknowledged that R.H. reported that she had a four-wheeler accident at some point and suffers some short-term memory loss as a result.

Haldeman-Smith did note that R.H. had a confirmed subsequent encounter of child sexual abuse. The child sexual abuse was present independent of the current case.

6

Haldeman-Smith testified that R.H. reported that she started using methamphetamine when she was 12 years old.

Finally, Haldeman-Smith also noted that R.H. would have preferred undergoing a psychological evaluation instead of having Haldeman-Smith testify about her treatment record.

R.H. also testified at the hearing. She admitted to running away from various placements multiple times. She also explained that she took medications to help treat her depression and ADD. R.H. acknowledged that she did have some memory loss but said that it was not severe.

The State called Lorelei Ahlemeyer, a victim advocate with the Attorney General's Office, to testify. Starting in January 2017, Ahlemeyer worked with R.H. Ahlemeyer testified that she had not noticed R.H. display any signs of psychosis, delusions, or detachment from reality.

After the testimony was presented, Ross argued that the factors set out by *Gregg* weighed in favor of the district court granting his motion to have R.H. independently psychologically evaluated.

In ruling on Ross' motion, the district court considered each factor set out in *Gregg*. For the first factor, the district court found that there was evidence corroborating R.H.'s version of the facts, including her ability to describe the other men involved and where they lived. The court also noted that DNA evidence was collected from R.H. and that Ross could not be excluded as a possible contributor.

The court found that the second factor, whether R.H. demonstrated mental instability, also weighed in favor of denying Ross' request. The court acknowledged that

7

R.H. had a difficult childhood and was diagnosed with a number of mental health issues. But the court also found that R.H.'s therapist testified that R.H. was "not delusional or suffering from schizophrenia, bipolar, or disassociation from reality."

On the third factor, whether R.H. demonstrated a lack of veracity, the court found that R.H. admitted to lying about her age to Ross but that no evidence was presented that she contradicted her statements to law enforcement or her testimony. Nor had R.H. recanted any of the allegations she had made.

The court also found that the fourth factor, whether similar charges by R.H. were proven to be false, weighed against granting Ross' motion. There was no evidence presented that R.H. made similar charges against others that was later proven to be false.

The court did find that the fifth factor, whether the defendant's motion for an evaluation appeared to be a fishing expedition, did not weigh against Ross. The court seemed to think that Ross' request for an independent psychological evaluation was legitimate.

Finally, the court found that the sixth factor, whether R.H. provided an unusual response when questioned about her understanding of what it means to tell the truth, weighed against granting Ross' motion. The court noted that R.H. was not specifically asked about what it meant to tell the truth, but that she did not provide an unusual response when taking the oath to tell the truth.

Ultimately, the district court held that

"the only factor that could arguably support the request for a psychological examination is the second factor. [R.H.] clearly has had significant issues in the past, although the therapist testified that at this time she is doing well. She is not suffering from

8

schizophrenia, bipolar disorder, or disassociation from reality. [R.H.] was articulate and able to provide responses that were appropriate to the questions asked."

On appeal, Ross argues that the district court erred in its findings. For the first factor, Ross argues that there was no evidence, specifically focusing on DNA evidence, corroborating R.H.'s factual account. However, that is not the case. R.H. claimed that she had sexual relations with the defendant and Daniel Ross. The DNA evidence supported that claim. Daniel's DNA was found on R.H. And another DNA sample, from which Ross could not be excluded as a contributor, was also found on R.H.

Ross also argues that there were no other statements to corroborate R.H.'s allegations of sexual abuse. But that is also not the case. At the very least, Payan told authorities that Ross was "pimping" R.H. out—corroborating R.H.'s statements.

Ross also argues that R.H.'s history of mental health disorders warranted an independent psychological evaluation. For support, Ross' cites to *McCune*, 299 Kan. at 1231. But *McCune* does not support Ross' argument.

In *McCune*, the Kansas Supreme Court upheld the district court's denial of a motion for an independent psychological evaluation because McCune "presented no evidence that [the victim] was mentally unstable, nor did he allege [the victim] gave an unusual response when asked what it meant to tell the truth." *McCune*, 299 Kan. at 1231-32. The same is true here. R.H.'s therapist testified that R.H. had displayed no delusional behavior or signs of disassociation from reality.

Ross also argues that the district court ignored the inconsistent statements R.H. made, most notably that R.H. lied to Ross and others about her age and that she did not initially disclose certain sexual contact she had with others, including Daniel. However, R.H. was consistent in her version of events since reporting them to the police. An earlier

9

lie about her age to the accused does not seem to be a demonstration of a lack of veracity that the courts in *Gregg* and later cases contemplated. See *McCune*, 299 Kan. at 1231; *Berriozabal*, 291 Kan. at 581 (noting that a complaining witness' inconsistent statements does not compel a mental evaluation of the witness).

Next, Ross argues that the district court failed to give proper weight to the fact that R.H. had made previous allegations of sexual abuse and was unable to relay the results of those allegations. However, the burden was on Ross to show that those allegations were later proven false. See *McCune*, 299 Kan. at 1231 (noting psychiatric evaluation of a complaining witness is appropriate when the defendant can show compelling reasons for the evaluation). Ross did not present any evidence that R.H. had previously made false accusations of sexual abuse against others.

Finally, Ross argues that the district court did not give enough weight to the fact that his request for an independent evaluation of R.H. was not a fishing expedition. He asserts that he was unable to present a full and complete defense because he was unable to perform an independent evaluation of R.H. His argument is unpersuasive. Ross was able to argue that R.H. was not a compelling witness before the jury. Ross pointed out that R.H. was using methamphetamine, made prior allegations of rape against others, had multiple mental health diagnoses, self-reported short-term memory problems, and had inconsistencies between her testimony and her earlier statements. Even without an independent evaluation, Ross was able to make his points to the jury.

As to the sixth factor—whether R.H. provided an unusual response when questioned about her understanding of what it means to tell the truth—the district court noted that R.H. did not provide an unusual response when giving the oath to tell the truth. Ross does not challenge this finding.

10

Ross does note that R.H. "indicated that she did not see a psychological evaluation as a problem." However, Ross ignores the context of R.H.'s statement. R.H. told Ahlemeyer that she would have preferred a new psychological evaluation as opposed to having Ahlemeyer testify about her entire medical record. Given the fact that Ahlemeyer was testifying about R.H.'s medical record, R.H. conditional preference is irrelevant.

Ross fails to meet his burden to show that the district court abused its discretion by denying his motion. He does not allege that the court made a mistake of law or a mistake of fact. And when considering the totality of the circumstances, the district court's decision was not unreasonable. See *Ingham*, 308 Kan. at 1469. Accordingly, the district court did not abuse its discretion when it denied Ross' request that R.H. be subjected to an independent psychiatric evaluation.

*The district court did not err by admitting statements made by Ross alleging that there was a conspiracy against him.*

For his second issue on appeal, Ross argues the district court erred by allowing the State to introduce, as evidence at trial, an inmate request form and a video interview between Ross and an investigator.

Admission of evidence involves several legal considerations: determining relevance; identifying and applying legal principles including rules of evidence; and weighing prejudice against probative value. See *State v. Shadden*, 290 Kan. 803, 817-18, 235 P.3d 436 (2010).

Relevance has two elements: a materiality element and a probative element. Evidence is material when the fact it supports is in dispute or in issue in the case. *State v. Miller*, 308 Kan. 1119, 1167, 427 P.3d 907 (2018). The appellate standard of review for materiality is de novo. 308 Kan. at 1166.

11

Evidence is probative if it has any tendency to prove any material fact. 308 Kan. at 1167. The district court's determination of whether evidence was probative is reviewed for abuse of discretion. 308 Kan. at 1166.

Before trial began, the district court held a *Jackson v. Denno* hearing to determine whether an inmate request form filled out by Ross and his statements to Corrections Officer David Lovelace were admissible at trial. The form is present in the record and, generally, Ross was requesting to speak with the Sheriff because he believed he had been set up. After Lovelace received the form, he spoke with Ross about his request. The conversation was recorded.

Essentially, Ross relayed that R.H. was sent to him and he was being "setup" by multiple individuals. At one point in the conversation, Ross acknowledged that he and R.H. went to Gene's house (where R.H. accused him of trafficking her to Gene) but he said they just fell asleep.

The district court ruled that Ross made his statements freely and voluntarily. Although Ross acknowledged that some of the statements he made were likely admissible as statements against interest, he asserted that the parts of the conversation where he alleged there was a setup against him were inadmissible. The evidence was admitted, over Ross' objection, at trial. On appeal, Ross argues that the evidence was irrelevant and an improper attack on his character.

To determine whether Ross' statements were relevant, this court must determine whether the evidence was material and probative. See *Miller*, 308 Kan. at 1167. Ross' statements were material to the case. As the State points out in its brief, Ross' statements can be seen as implying that he was guilty but that he was setup. That would be material to generally prove the State's case against Ross.

12

Ross does not argue that the district court erred in finding that the evidence, if material, was probative. However, he does argue that the evidence was improper character evidence because it painted him as a conspiracy nut and made him "'appear like a weirdo in front of the 12 people that are deciding his fate.'"

Generally, "evidence of traits of [a witness'] character other than honesty or veracity or their opposites, shall be inadmissible." K.S.A. 60-422(c). Ross' statements to Lovelace do not run afoul of this prohibition. His statements were not offered, nor can they be fairly characterized, as character evidence. There was no allegation that Ross was a conspiracy theorist, that he was "'out there,'" or that he was a "'weirdo.'" Instead, Ross' statements corroborated parts of R.H.'s testimony and implied that Ross was guilty. The district court did not err in admitting the evidence.

*The district court did not err by instructing the jury that the lack of knowledge of R.H.'s age was not a defense.*

For his third issue on appeal, Ross argues that the district court improperly instructed the jury that lack of knowledge of R.H.'s age was not a defense and that the instruction violated his due process rights. In reviewing jury instructions we follow a three-step process. First we determine whether the party challenging the instruction properly preserved the issue for appellate review. Second, we examine whether the instruction was erroneous. And finally, if it was erroneous, we determine whether the error requires reversal. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

For the aggravated indecent liberties and criminal sodomy charges the court instructed the jury that it had to find that Ross acted knowingly. The district court also instructed the jury it had to find that Ross acted with intent to find him guilty of indecent liberties, and for commercial sexual exploitation of a child it had to find that Ross acted with intent. But in addition, as to all charges, the court gave Instruction 13.

Instruction 13 provided: "It is not a defense that the defendant did not know the age of [R.H.], even though age is a material element of the crimes with which the defendant is charged." The instruction mirrored PIK Crim. 4th 52.030. Ross objected to the instruction at trial arguing that the instruction differed from K.S.A. 2016 Supp. 21-5204(b) ("Proof of culpable mental state does not require proof . . . that the accused had knowledge of the age of minor, even though age is a material element of the crime with which the accused is charged."). The district court overruled Ross' objection and the instruction was presented as written. Accordingly, he has properly preserved his challenge to the instruction.

At trial, however, Ross did not argue that Instruction 13 violated his due process rights. So we normally would not allow him to raise that argument on appeal. But there are limited exceptions to the preservation rule. An issue can be raised for the first time on appeal if: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). The State agrees that Ross' due process claim is a pure question of law, so we will deem the issue properly preserved and proceed to the second step of our analysis.

At the second step, appellate courts consider whether the instruction was legally and factually appropriate. *McLinn*, 307 Kan. at 318. An appellate court only determines whether an instruction was factually appropriate if it was legally appropriate. *State v. Broxton*, 311 Kan. 357, 361, 461 P.3d 54 (2020). Our review of legal appropriateness is unlimited. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016). We will address both facets of Ross' argument—legal accuracy and due process.

14

*Instruction 13 was legally appropriate.*

Ross' first argument is essentially that there is a fundamental difference between the State not having to prove that he knew R.H. was underage and Ross believing R.H. was 18 years old. However, this court has already decided this issue contrary to Ross' position.

In *State v. Fore*, 17 Kan. App. 2d 703, 704-05, 843 P.2d 292 (1992), this court held that a functionally identical jury instruction to the instruction challenged here was a correct statement of law. The defendants in *Fore* were convicted of aggravated criminal sodomy and indecent liberties with a child. At their trial, the jury was instructed: "'It is not a defense that the accused did not have knowledge of the age of a minor, even though age is a material element of the crime with which he is charged.'" 17 Kan. App. 2d at 704. On appeal, the defendants argued that the jury instruction differed significantly from K.S.A. 21-3202(2), now K.S.A. 2019 Supp. 21-5204(b), and that the instruction eliminated a defense otherwise available to them.

As the court in *Fore* stated:

"The only possible relevance of the defendants' knowledge of the victim's age is that defendants could claim that, absent knowledge that the victim was a minor, they lacked intent to commit the prohibited acts with a minor. However, K.S.A. 21-3202(2) provides that proof of intent does not require proof that the accused knew the age of the minor. Thus, any claim that the defendants did not know the victim was a minor is irrelevant." 17 Kan. App. 2d at 704-05.

The same is true here. The only possible relevance to Ross' believing R.H. was 18 years old is that he could claim he lacked the intent to commit the prohibited acts with a minor. But K.S.A. 2019 Supp. 21-5204(b) makes it clear that the State is not required to

15

prove that Ross had knowledge of R.H.'s age. Any claim that he believed that R.H. was 18 is irrelevant. See 17 Kan. App. 2d at 704-05.

Additionally, the Kansas Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). Instruction 13 properly mirrored the PIK instruction.

Instruction 13 was legally appropriate. However, Ross also argues that Instruction 13 violated his due process rights.

*Instruction 13 did not violate Ross' due process rights.*

Ross argues that Instruction 13 "improperly transformed the charges levied against [Ross] into strict liability offenses by eliminating the defense that [Ross] did not know th[at R.H.] was underage." Ross is essentially arguing that Instruction 13 removed any mens rea requirement from the statutes under which he was convicted.

Resolving this issue involves statutory interpretation which is a question of law over which this court has unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

Under K.S.A. 2019 Supp. 21-5202(a) "a culpable mental state is an essential element of every crime defined by this code." If a crime does not prescribe a culpable mental state one is "nevertheless required unless the definition plainly dispenses with any mental element." K.S.A. 2019 Supp. 21-5202(d).

Instruction 13 did not remove the requirement that the State prove that Ross acted knowingly when he had sexual intercourse and engaged in sodomy with R.H. See K.S.A.

16

2019 Supp. 21-5202; K.S.A. 2019 Supp. 21-5504; K.S.A. 2019 Supp. 21-5506. In fact, Instruction 6 (aggravated indecent liberties), Instruction 8 (criminal sodomy) and Instruction 12 (criminal sodomy) specifically noted that the State had to establish that Ross acted knowingly. In other words, he knowingly had sexual intercourse with R.H. But it also accurately states the law—it is immaterial that Ross did not know that R.H. was under the age of 18. See K.S.A. 2019 Supp. 21-5204(b).

Nor did Instruction 13 remove the requirement that the State prove that Ross had the intent required for the charges of indecent liberties with a child and commercial sexual exploitation of a child. Instruction 9 (indecent liberties with a child) required the State to prove that Ross fondled or touched R.H. with the intent to rouse his sexual desires, her sexual desires, or both. Instructions 10 and 11 (commercial exploitation of a child) also required that the State establish that Ross "gave, offered, or agreed to give anything of value to procure, recruit, induce, solicit, hire or otherwise obtain [R.H.] to engage in sexual intercourse or sodomy with the intent to arouse or gratify" his sexual desires or those of another. Accordingly, the district court did not violate Ross' due process rights by including instructions that properly stated the law—that it was not a defense that Ross did not know R.H.'s age.

Because we find that Instruction 13 was legally and factually appropriate and thus not in error, we need not reach the third step of the analysis—whether the error requires reversal.

*The district court did not err by placing "guilty" above "not guilty" on the verdict forms.*

In his fourth issue on appeal, Ross argues the district court violated his presumption of innocence by placing the "guilty" option above the "not guilty" option on the verdict forms. Because the parties are only contesting whether the verdict forms were

17

legally appropriate, this court exercises unlimited review. See *Johnson*, 304 Kan. at 931.

For each verdict form in this case, the "guilty" option was placed above the "not guilty" option. During the jury instruction conference, Ross requested that the "not guilty" option on the verdict forms be placed above the "guilty" option. Thus, Ross preserved the issue for appeal.

On appeal, Ross argues that by placing the "guilty" option above the "not guilty" option, the district court violated his right to a fair trial because by placing the "guilty" option first his presumption of innocence is denied.

Ross acknowledges that the verdict forms in this case conform to the applicable PIK instructions. He also acknowledges that the Kansas Supreme Court has found that placing "guilty" first does not violate the presumption of innocence. See *State v. Wesson*, 247 Kan. 639, 652, 802 P.2d 574 (1990). Our Supreme Court reiterated the holding in *Wesson* in *State v. Wilkerson*, 278 Kan. 147, 159, 91 P.3d 1181 (2004). Ross argues that both *Wesson* and *Wilkerson* were wrongly decided.

This court is duty-bound to follow Kansas Supreme Court precedent absent some indication that the Kansas Supreme Court is departing from its previous position. *State v. Vrabel*, 301 Kan. 797, 809-10, 347 P.3d 201 (2015). The Kansas Supreme Court has given no indication that it will change course from its decisions in *Wesson* and *Wilkerson*. Accordingly, we hold that the district court did not err by placing the "guilty" option above the "not guilty" option on the verdict forms.

*There was no error, so there can be no cumulative error.*

For his final issue on appeal, Ross argues that the cumulative effect of the alleged errors warrants reversal of his convictions even if no single error does.

18

However, none of Ross' earlier issues are persuasive. If the record fails to support the errors raised by Ross on appeal, then there can be no cumulative error. Therefore, Ross' convictions cannot be reversed for cumulative error. See *State v. Marshall*, 303 Kan. 438, 451, 362 P.3d 587 (2015).

Affirmed.