No. 102,702

STATE OF KANSAS, *Appellee*, v. LUIS ROJAS-MARCELENO, *Appellant*.

(285 P.3d 361)

526

Opinion filed September 21, 2012.

*Rachel L. Pickering,* of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Amy L. Aranda,* assistant county attorney, argued the cause, and *Nicholas J. Heiman,* assistant county attorney, *Marc Goodman,* county attorney, and *Steve Six,* attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: Luis Rojas-Marceleno appeals his convictions and sentences for one count of rape, three counts of aggravated criminal sodomy, and one count of aggravated indecent solicitation of a child, arguing the district court committed reversible error in (1) denying his motion to compel a psychological examination of the victim; (2) denying his motion for a bill of particulars; (3) failing to give a limiting instruction after admitting evidence of his prior traffic offenses; and (4) denying his motion for new trial based on newly discovered evidence. Finding no error, we affirm the district court's rulings on each of these issues.

Rojas-Marceleno also challenges his conviction of aggravated indecent solicitation of a child on the ground he was denied his right to a unanimous jury verdict. He contends the State charged him with alternative means of committing the crime and the court instructed the jury on both means, but the State failed to present evidence to support both means. Because we conclude the challenged portion of the statute at issue, K.S.A. 21-3511(a), does not present alternative means of committing the crime, we reject this argument.

Finally, Rojas-Marceleno challenges the restitution portion of his sentence, claiming the district court lacked jurisdiction to order restitution 30 days after imposing a lawful sentence. Following *State v. McDaniel,* 292 Kan. 443, Syl. ¶¶ 1, 2, 254 P.3d 534 (2011), we conclude the district court had jurisdiction to enter the restitution order because the order completed the defendant's sentence rather than altering or modifying it.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 24, 2008, 13-year-old C.V. spent the day baby-sitting at the home of her aunt, Maria M., while Maria and C.V.'s mother went to Kansas City. Maria left her cell phone with C.V. so that C.V. would have a phone to use in case of emergencies. Later that evening, Maria discovered sexually explicit text messages in the "sent box" of her cell phone. The messages had been sent to "Lil Bro," Maria's contact name for her 24-year-old brother, Rojas-Marceleno. After Maria showed the messages to her sister, Xinia S., Maria and Xinia called C.V.'s mother and told her about the messages. C.V.'s parents questioned C.V. about the messages, and C.V. admitted she had been involved in a sexual relationship with her uncle, Rojas-Marceleno, for "a long time" and that she had lost her virginity to him.

After contacting the police, C.V.'s parents took C.V. to the hospital for a sexual assault examination. During the examination, C.V. reported she had sexual intercourse with Rojas-Marceleno on approximately five or six occasions during the preceding year, most recently about 10 days before. The next day, Kansas Department of Social and Rehabilitation Services special investigator Kayla Delgado interviewed C.V. at the Child Advocacy Center. In the interview, C.V. disclosed that she and Rojas-Marceleno first had sexual intercourse on November 14, 2007, that subsequently they had oral sex and sexual intercourse on several occasions, and that the last time they had intercourse was on September 13, 2008.

The State initially charged Rojas-Marceleno with 5 counts of rape and 13 counts of aggravated criminal sodomy. After a preliminary hearing, the district court dismissed three counts of aggravated criminal sodomy. The State filed an amended complaint, charging Rojas-Marceleno with 5 counts of rape, 10 counts of aggravated criminal sodomy, and 1 count of aggravated indecent solicitation of a child.

Prior to trial, the district court denied Rojas-Marceleno's motion for a bill of particulars and his motion to compel a psychological examination of C.V. During trial, the district court dismissed one count of rape and five counts of aggravated criminal sodomy. The

jury found Rojas-Marceleno guilty of one of the four remaining counts of rape, three of the five remaining counts of aggravated criminal sodomy, and the one count of aggravated indecent solicitation of a child.

The district court denied Rojas-Marceleno's motion for new trial based on newly discovered evidence and imposed two consecutive prison sentences of life without the possibility of parole for 25 years, plus a consecutive prison sentence of 57 months. We have jurisdiction over Rojas-Marceleno's appeal under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence imposed).

## DISCUSSION

*The district court did not abuse its discretion in denying Rojas-Marceleno's motion to compel a psychological examination of C.V.*

Before trial, Rojas-Marceleno filed a motion to compel a psychological examination of C.V. asserting C.V. lacked veracity and had a history of stealing and disciplinary problems. The district court denied the motion, finding Rojas-Marceleno failed to establish any compelling reasons to support the examination. On appeal, Rojas-Marceleno claims the district court abused its discretion in failing to compel the exam.

We review a district court's denial of a defendant's motion to compel a psychological examination of a complaining witness in a sex crime case for an abuse of discretion. *State v. Berriozabal,* 291 Kan. 568, 580, 243 P.3d 352 (2010); *State v. Price,* 275 Kan. 78, 83, 61 P.3d 676 (2003).

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.,* if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law, *i.e.,* if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.,* if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based." *State v. Ward,* 292 Kan. 541, 550, 256 P.3d 801 (2011) (citing *State v. Gonzalez,* 290 Kan. 747, 755-56, 234 P.3d 1 [2010]), *cert. denied* 132 S. Ct. 1594 (2012).

A district court has discretion to order a psychological examination of the complaining witness in a sex crime case only if the defendant can demonstrate compelling circumstances justifying

such an examination. See *Berriozabal*, 291 Kan. at 580-81; *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979). In determining whether the district court abused its discretion, we consider the totality of the circumstances, including several nonexclusive factors: (1) whether there was corroborating evidence of the complaining witness' version of the facts, (2) whether the complaining witness demonstrates mental instability, (3) whether the complaining witness demonstrates a lack of veracity, (4) whether similar charges by the complaining witness against others are proven to be false, (5) whether the defendant's motion for a psychological evaluation of the complaining witness appears to be a fishing expedition, and (6) whether the complaining witness provides an unusual response when questioned about his or her understanding of what it means to tell the truth. *Berriozabal*, 291 Kan. at 581 (citing *Price*, 275 Kan. at 84; *Gregg*, 226 Kan. at 490).

A district court rarely abuses its discretion in refusing to order a psychological examination. See *Berriozabal*, 291 Kan. at 581 (citing *Gregg*, 226 Kan. at 489). Further, as the party asserting an abuse of discretion, Rojas-Marceleno has the burden to show the district court abused its discretion in this case. See *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009).

In support of his motion to compel a psychological examination of C.V., Rojas-Marceleno claimed C.V. lacked veracity and mental and emotional stability; displayed aggressive, inappropriate, and promiscuous behavior; and used "threats against her mother to get her way." Specifically, he alleged that C.V.'s mother found her at home with three boys in a promiscuous situation in October 2008, that C.V. stole money from her mother and lied to her mother when the theft was discovered, and that C.V. was physically abused by her mother and removed from the home.

In response, the State argued that the graphic text messages found on Maria's phone corroborated C.V.'s allegations of sexual abuse, that C.V. was never formally removed from her home although she was informally placed at her grandmother's home by agreement of the family, and that C.V.'s only experience with mental health counseling occurred after C.V.'s disclosures of the sexual abuse. Further, the State pointed out that Rojas-Marceleno's al-

legations regarding C.V.'s lack of veracity were unrelated to the sexual abuse allegations in this case.

The district court conducted a nonevidentiary hearing on the motion and, for purposes of the hearing, accepted as true Rojas-Marceleno's allegations regarding C.V.'s behavioral issues. Applying the *Berriozabal/Price/Gregg* factors, the court found the text messages found by C.V.'s aunt corroborated C.V.'s allegations and that C.V.'s alleged emotional issues did not demonstrate mental instability. Further, relying on *Price*, the district court found that the veracity factor "may weigh in favor of the evaluation" but that this factor alone was insufficient to warrant an evaluation. The district court reasoned that this factor required something more than "what typically happens with adolescents when confronted with wrong-doing by their parents." Finally, the district court pointed out that there was no evidence that C.V. made similar allegations toward others that were later proven false. Finding no compelling reasons to order the examination, the district court denied Rojas-Marceleno's motion.

On appeal, Rojas-Marceleno argues primarily that the district court erred in defining a "lack of veracity" to require something more than the allegations he made regarding C.V.'s veracity in this case.

We think the district court correctly considered Rojas-Marceleno's allegations regarding C.V.'s lack of veracity in the context of the totality of the circumstances standard the court must consider in determining whether to order a psychological examination. Essentially, the district court found that C.V.'s lack of veracity was the only factor that arguably favored granting the defendant's motion but that this factor was not sufficiently compelling under the circumstances to require an examination.

The district court's analysis is consistent with our prior caselaw interpreting the "lack of veracity" factor in the context of a motion to compel a psychological examination of a complaining witness in a sex crime case. See, *e.g.*, *Berriozabal*, 291 Kan. at 582 (finding single alleged incident of victim lying about defendant's former stepdaughter's virginity was not a compelling reason to order psychological examination); *Price*, 275 Kan. at 88 (finding no compel-

ling reason to justify psychological examination of victim when evidence indicated victim made untruthful statements but statements were unrelated to contact with defendant and victim made no other false allegations of sexual abuse); *State v. McIntosh*, 274 Kan. 939, 944-46, 58 P.3d 716 (2002) (finding victim's delayed reporting of the sexual abuse, demonstration of friendly feelings toward the defendant before and after the abuse, inconsistent accounts of the abuse, and lack of corroborating medical evidence insufficient to support lack of veracity); *State v. Lavery*, 19 Kan. App. 2d 673, 676-77, 877 P.2d 443 (finding victim did not demonstrate either a lack of mental instability or lack of veracity when evidence showed that victim had prior exposure to sex, may have been molested by someone other than the defendant, was unsupervised during the summer, used foul language, and told friends a false story unrelated to abuse allegations), *rev. denied* 253 Kan. 862 (1993).

We conclude the district court did not abuse its discretion in concluding Rojas-Marceleno failed to establish compelling reasons to require C.V. to undergo a psychological examination, and we affirm the district court's denial of the motion.

*The district court did not abuse its discretion in denying Rojas-Marceleno's motion for a bill of particulars.*

Next, Rojas-Marceleno claims the district court erred in denying his motion for a bill of particulars in violation of his right to present a defense under the Sixth Amendment to the United States Constitution and his right to " 'demand the nature and cause of the accusation against him' " under §10 of the Kansas Constitution Bill of Rights.

We review a district court's order denying a motion for a bill of particulars for an abuse of discretion. *State v. Bischoff*, 281 Kan. 195, 207-08, 131 P.3d 531 (2006); see *Ward*, 292 Kan. at 550 (explaining abuse of discretion standard). Rojas-Marceleno bears the burden of establishing an abuse of discretion. See *Woodward*, 288 Kan. at 299.

A charging document must contain "a plain and concise written statement of the essential facts constituting the crime charged." K.S.A. 22-3201(b). A charging document is generally sufficient if

it is "drawn in the language of the statute," and "[t]he precise time of the commission of an offense need not be stated in the indictment or information; but it is sufficient if shown to have been within the statute of limitations, except where the time is an indispensable ingredient in the offense." K.S.A. 22-3201(b).

But when a complaint, information, or indictment fails to specify the particulars of the crime charged sufficiently to enable the defendant to prepare a defense, K.S.A. 22-3201(f) permits the court, on written motion of the defendant, to require the prosecuting attorney to furnish the defendant with a bill of particulars.

"A bill of particulars has two functions: (1) to inform the defendant of the nature of the charges and the evidence to enable him to prepare a defense, and (2) to prevent further prosecution for the same offense." *State v. Myatt*, 237 Kan. 17, 29, 697 P.2d 836 (1985). The granting of a bill of particulars is discretionary with the district court unless the charging instrument is so deficient that the defendant is not informed of the charges against which he or she must defend. *State v. Webber*, 260 Kan. 263, 284, 918 P.2d 609 (1996), *cert. denied* 519 U.S. 1090 (1997).

" 'When charges in the information are clarified by facts brought out at the preliminary hearing there is no need for amplification by a bill of particulars, absent a showing of surprise or prejudice.' " *Myatt*, 237 Kan. at 29 (quoting *State v. Hill*, 211 Kan. 287, Syl. ¶ 9, 507 P.2d 342 [1973]); see also *Webber*, 260 Kan. at 284 (information revealed during the preliminary hearing and through pretrial discovery may be sufficient to apprise the defendant of the nature of the charges). Additionally, the State is generally allowed to allege approximate time frames in prosecutions for sex offenses committed against children. See *State v. Armstrong*, 238 Kan. 559, 561-63, 712 P.2d 1258 (1986); *Myatt*, 237 Kan. at 28-29.

Here, the State initially charged Rojas-Marceleno with 5 counts of rape and 13 counts of aggravated criminal sodomy. At the close of the preliminary hearing, the State conceded a lack of evidence to support the aggravated criminal sodomy counts charged in Counts 7, 17, and 18. Thus, the district court dismissed those counts and found probable cause to proceed to trial on the remaining charges.

The State then amended the complaint to allege the rapes occurred on the following days: Count 1, on or about November 14, 2007; Counts 2, 3, and 4, on, about, or between November 14, 2007, and September 24, 2008; and Count 5, on, about, or between September 13, 2008, and September 14, 2008. Further, the amended complaint alleged the aggravated criminal sodomy charges occurred on the following days: Count 6, on or about November 22, 2007; and Counts 8 through 16, on, about, or between October 1, 2007, and September 24, 2008. Finally, the amended complaint added Count 19, aggravated indecent solicitation of a child, and alleged the crime occurred on, about, or between December 31, 2007, and January 1, 2008.

Rojas-Marceleno filed a motion for a bill of particulars seeking specific information regarding "the alleged crime and the alleged date or dates, approximate if necessary," in Counts 2, 3, 4, 8, 10, 11, 12, 13, 14, 15, 16, and 19 of the complaint. Rojas-Marceleno acknowledged that the complaint alleged time periods within the statute of limitations, but he asserted the alleged crimes and the time periods were too vague and speculative to enable him to prepare a defense.

The State objected to Rojas-Marceleno's motion, arguing the charging document sufficiently alleged time frames within the statute of limitations and that a bill of particulars was unnecessary because the State had provided Rojas-Marceleno with full discovery and the State could not establish the exact dates of the alleged crimes. Further, the State pointed out that the defendant heard C.V.'s preliminary hearing testimony regarding the specific dates and locations for some of the offenses and/or specific identifiers or details regarding the other offenses.

The district court denied Rojas-Marceleno's motion but ordered the State to provide a list of identifying factors for Counts 2-4 and 8-16. The court explained that further identifying factors could include a description of the location where the crime occurred, the individuals present, the clothing worn by the parties, and other similar information. The court further explained that while the State would not be bound by these factors, the factors should assist the defendant to prepare a defense.

As directed, the State filed a written notice further identifying Counts 2 and 3 as two counts of rape alleged to have occurred at Rojas-Marceleno's Cherokee Street address between November 14, 2007, and September 24, 2008, and distinguishing these two counts from the three counts of rape that were alleged to have occurred on November 14 (Count 1), at C.V.'s house in her brother's room while her parents were at work (Count 4), and on September 13 (Count 5).

Regarding the sodomy charges, the State further identified Count 8 as the first time C.V. had oral sex with Rojas-Marceleno at his Cherokee Street address, sometime between October 1, 2007, and September 24, 2008; Count 9 as the oral sex that occurred after a trip to Walmart as C.V. and Rojas-Marceleno drove around near C.V.'s grandmother's house; and Counts 10-16 as occurring between October 1, 2007, and September 24, 2008, at either Rojas-Marceleno's Cherokee Street or Melrose Street address. The State also identified Counts 10-16 by distinguishing them from the specific incidents alleged in Count 6 (Thanksgiving incident), Count 8 (first incident of oral sex), and Count 9 (Walmart incident).

Rojas-Marceleno objected to the identifying factors, arguing the State failed to provide any new information for Counts 2-4, 8, and 10-16. At a pretrial hearing, the district court overruled Rojas-Marceleno's objections. The court found the State had adequately further identified Counts 2, 3, and 10-16 by distinguishing the charges from charges specifically identified in other counts. The court acknowledged that the lack of further specificity would make it difficult to defend these charges, but the court concluded it would be premature to prohibit the State from proceeding to trial.

We conclude the district court did not abuse its discretion in denying the motion for a bill of particulars. First, the State was not required to prove the offenses occurred within the statute of limitations because time is not an indispensable ingredient of rape, aggravated criminal sodomy, or aggravated indecent solicitation of a child. See K.S.A. 21-3502(a)(2); K.S.A. 21-3506(a)(1); K.S.A. 21-3511(a). Further, because the crimes alleged were sex crimes against a child, the State was permitted to allege approximate time frames. See *Armstrong*, 238 Kan. at 562-63 (concluding district

court did not abuse its discretion in denying a motion for a bill of particulars when the State charged defendant with taking aggravated indecent liberties with an 11-year-old child over a 5-month time frame).

Second, the defendant was convicted of only five counts—Count 5 (rape), Counts 8, 9, and 11 (aggravated criminal sodomy), and Count 19 (aggravated indecent solicitation). Of those, the State alleged specific 2-day time periods for the rape charged in Count 5 and the aggravated indecent solicitation charged in Count 19. Further, the State identified Count 8 as the first incident of oral sex, and C.V. testified that some incidents of oral sex occurred before the first time she and Rojas-Marceleno had sexual intercourse on November 14, 2007. Thus, the time frame for Count 8 was narrowed to sometime between October 1, 2007, and November 14, 2007.

Although C.V. could not identify a specific date regarding Count 9, she provided specific details about that count through her testimony at the preliminary hearing (the Walmart incident). Finally, regarding Count 11, the State initially alleged that this count of aggravated criminal sodomy occurred sometime between October 1, 2007, and September 24, 2008. Later, the State identified this count as occurring at either the defendant's Cherokee address or his Melrose address.

While the identifying factors for Count 11 remained vague, even if we were to find the district court erred in failing to require the State to provide further identifying factors for Count 11, Rojas-Marceleno cannot establish prejudice as a result of that error.

At trial, C.V. testified she performed oral sex on Rojas-Marceleno in her bathroom sometime between October 2007 and November 14, 2007, while Rojas-Marceleno, his wife, Jamie Rojas-Marceleno, and their two children were at C.V.'s house. According to C.V., Jamie found C.V. hiding in the bathroom shower after the incident. Rojas-Marceleno elicited testimony from Jamie in an attempt to contradict C.V.'s version of that incident. And, during closing arguments, the State clarified that it was relying on C.V.'s testimony about the bathroom/shower incident to support the aggravated criminal sodomy charge in Count 11.

For these reasons, we conclude the district court did not abuse its discretion in denying Rojas-Marceleno's motion for a bill of particulars.

*Rojas-Marceleno failed to preserve his objection to the admission of his traffic offenses.*

At trial, the prosecutor elicited testimony that Rojas-Marceleno had served jail time for driving without a driver's license in November 2007, only 2 weeks before one of the alleged rapes. Rojas-Marceleno claims this evidence "undoubtedly prejudiced the jury," and he contends the district court should have given a limiting instruction advising the jury to disregard the evidence of his prior crimes.

Preliminarily, the State argues Rojas-Marceleno failed to preserve this issue for appeal because he failed to object to the admission of the evidence. See K.S.A. 60-404 (contemporaneous objection rule); *State v. King*, 288 Kan. 333, 341-42, 204 P.3d 585 (2009) (compliance with K.S.A. 60-404 is required to preserve evidentiary ruling for appellate review). We agree.

While Rojas-Marceleno framed this issue as an instructional error, he does not suggest any specific purposes for which the jury should have considered his prior offenses, nor does he suggest what would have been an appropriate limiting instruction. See, *e.g.*, *State v. Magallanez*, 290 Kan. 906, 919, 235 P.3d 460 (2010) (reiterating that a "shotgun" limiting instruction that fails to focus specifically on the object of proof is rarely proper and increases the risk of instructional error; finding that it was error to instruct upon an inapplicable K.S.A. 60-455 factor).

Instead, Rojas-Marceleno argues the "jury should have been instructed to disregard" the evidence because the evidence was prejudicial and irrelevant. Of course, this argument does not support Rojas-Marceleno's claim that the district court should have given a limiting instruction. Instead, it essentially challenges the admissibility of the evidence—an argument that should have been raised to the district court after a proper and timely objection to the admission of the evidence.

In light of Rojas-Marceleno's failure to object, we decline to review this issue.

*Rojas-Marceleno has failed to establish cumulative errors requiring reversal.*

Rojas-Marceleno argues that even if we conclude the district court's allegedly erroneous rulings are harmless when considered individually, we must nevertheless reverse his convictions because the cumulative effect of the errors substantially prejudiced his right to receive a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution and §10 of the Kansas Constitution Bill of Rights.

But "[c]umulative error will not be found when the record fails to support the errors raised on appeal by the defendant. [Citations omitted.]" *State v. Cofield*, 288 Kan. 367, 378, 203 P.3d 1261 (2009). A single error cannot constitute cumulative error. *State v. Foster*, 290 Kan. 696, 726, 233 P.3d 265 (2010).

Rojas-Marceleno has failed to establish any error by the district court, and we reject his claim of cumulative error.

*The district court did not abuse its discretion by denying Rojas-Marceleno's motion for new trial.*

Rojas-Marceleno next contends the district court abused its discretion by denying his motion for new trial. He asserts that he supported the motion with the testimony of C.V.'s classmate, R.B. and that this newly discovered material evidence could not have been produced at trial with reasonable diligence. The State contends the newly discovered evidence could have been produced at trial, was not so material that it would have changed the outcome of the trial, and essentially constituted impeachment evidence.

While we review a district court's decision on a motion for new trial for an abuse of discretion, we review materiality decisions de novo, giving deference to the district court's findings of fact. See *State v. Warrior*, 294 Kan. 484, 505, 508-10, 277 P.3d 1111 (2012); see also *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011) (discussing abuse of discretion standard), *cert. denied* 132 S. Ct. 1594 (2012). Again, Rojas-Marceleno bears the burden of estab-

lishing the district court abused its discretion. See *State v. Woodward*, 288 Kan. 297, 299, 202 P.3d 15 (2009).

"The court on motion of a defendant may grant a new trial to him if required in the interest of justice." K.S.A. 22-3501(1). The two-part test for determining whether a new trial is warranted on the ground of newly discovered evidence requires a court to consider (1) whether the defendant has met the burden of establishing that the newly proffered evidence could not, with reasonable diligence, have been produced at trial and (2) whether the evidence is of such materiality that it would be likely to produce a different result upon retrial. *State v. Fulton*, 292 Kan. 642, 649, 256 P.3d 838 (2011); *State v. Cook*, 281 Kan. 961, 992, 135 P.3d 1147 (2006).

In determining whether newly proffered evidence is material, the district court must assess the credibility of the newly proffered evidence. See *Cook*, 281 Kan. at 993; *State v. Richard*, 235 Kan. 355, 363, 681 P.2d 612 (1984). Ordinarily, a new trial is not warranted when the newly proffered evidence merely tends to impeach or discredit the testimony of a witness. *Richard*, 235 Kan. at 363; *State v. Watson*, 204 Kan. 681, 685, 466 P.2d 296 (1970); *State v. Ayadi*, 16 Kan. App. 2d 596, 601-02, 830 P.2d 1210, *rev. denied* 250 Kan. 806 (1991). But, even when the evidence tends to impeach the testimony of a witness, the presence or absence of corroborating evidence is another factor to consider in determining whether the newly discovered evidence is of such materiality that it is likely to produce a different result upon retrial. See *State v. Norton*, 277 Kan. 432, 441-42, 85 P.3d 686 (2004); *State v. Smith*, 39 Kan. App. 2d 64, 68, 176 P.3d 997, *rev. denied* 286 Kan. 1185 (2008).

In his new trial motion, Rojas-Marceleno alleged he had discovered a new witness, R.B., a friend and classmate of C.V., who would testify that C.V. lied about having sex with Rojas-Marceleno to get back at him for telling C.V.'s parents that C.V. had a boyfriend.

At the motion hearing, R.B. testified that she was 14 years old, that she had known C.V. since the seventh grade, and that during the eighth grade she and C.V. were in the same first-hour class. According to R.B., sometime during November or December 2008 C.V. told R.B. that C.V.'s uncle, Rojas-Marceleno, had told C.V.'s

parents that C.V. and her boyfriend were dating. C.V. told R.B. that she was upset with her uncle for disclosing her relationship with her boyfriend and that she was going to try to get back at her uncle for it. R.B. further claimed C.V. said she was going to tell her parents that her uncle raped her so her parents would not find out that C.V. and her boyfriend were having sex. Finally, R.B. testified that C.V. denied being raped by her uncle.

R.B. further testified C.V.'s aunts contacted her approximately 2 to 3 weeks before the hearing after they had talked to some other girls at C.V.'s school. R.B. claimed she was afraid to testify because someone named "Lisa" had threatened her. On cross-examination, R.B. explained she had talked to Detective Lisa Sage before the hearing and told Sage that C.V. had disclosed that C.V.'s uncle had made C.V. do sexual things with him including oral sex. But upon further questioning, R.B. testified C.V. did not tell her about things C.V. did with her uncle and instead only told R.B. about how she planned to get back at her uncle for telling her parents about her boyfriend.

Rojas-Marceleno also presented testimony from a friend of R.B.'s, K.R., who had just completed the seventh grade. K.R. testified that sometime after Christmas, R.B. told K.R. that C.V.'s uncle was in jail for raping C.V. According to K.R., R.B. told her that C.V. was mad at her uncle for disclosing C.V.'s relationship with her boyfriend and that C.V. never had sex with her uncle. On cross-examination, K.R. testified her older brother, Sixto, recently had been in jail with Rojas-Marceleno. K.R. admitted that R.B. had been to K.R.'s house and had seen Sixto, but K.R. denied that Sixto was R.B.'s boyfriend.

The district court also heard conflicting testimony from C.V.'s father and Rojas-Marceleno regarding whether and when Rojas-Marceleno talked to C.V.'s father about C.V. having a boyfriend.

After hearing arguments on the motion for new trial, the district court carefully considered the motion before ultimately denying it for three reasons. First, the district court found that Rojas-Marceleno failed to satisfy the initial prong of *Cook*'s two-prong test. See *Cook*, 281 Kan. at 992. The judge reasoned:

"I have no doubt that had [Rojas-Marceleno's] sisters been given more time prior to trial they probably would have found [R.B.]. So, the question becomes was there reasonable diligence, and I think that there was and it was just a fluke that they didn't find [R.B.]. So, in finding or in considering the first prong of the test, it is the Court's opinion that the evidence could have been discovered prior to trial with reasonable diligence, but let's move on for the sake of argument."

The district court next found that Rojas-Marceleno failed to establish the second prong of the test—*i.e.*, that R.B.'s testimony would have produced a different result on retrial. The court noted that Rojas-Marceleno's primary strategy at trial was to attack C.V.'s credibility. But relying on inconsistencies in R.B.'s testimony as well as the court's assessment of R.B.'s demeanor while testifying, the court concluded R.B.'s testimony was unlikely to have produced a different result upon retrial.

Finally, the court found that even if Rojas-Marceleno had satisfied both prongs of the two-part test, the court would have denied his motion for new trial because Rojas-Marceleno's primary purpose in presenting R.B.'s testimony was to impeach C.V.'s credibility. The judge held, "[I]t is clear that case law in Kansas prohibits me from directing a new trial based on newly discovered evidence which merely tends to impeach or discredit testimony of a witness."

We need not consider the district court's third reason for denying the motion for new trial as we conclude the district court did not abuse its discretion in finding that Rojas-Marceleno failed to establish either prong of *Cook*'s two-prong test. First, substantial competent evidence supports the court's factual finding that R.B.'s testimony, which was discovered when Rojas-Marceleno's sisters spoke with R.B. following trial, could have been discovered before trial with reasonable diligence.

Further, we agree with the district court's determination regarding the materiality of the proposed evidence. Significantly, the district court based its materiality determination on its assessment of R.B.'s credibility. In concluding R.B.'s testimony was not sufficiently material that it would have affected the outcome of the trial, the district court specifically considered R.B.'s demeanor during the hearing and the consistency and manner of her responses. We will not reassess the court's determination of R.B.'s credibility. See

*State v. Barnes*, 293 Kan. 240, 263-64, 262 P.3d 297 (2011) (an appellate court does not reassess the credibility of witnesses).

Finally, as the district court recognized, Rojas-Marceleno's main trial strategy was to attack C.V.'s credibility, and he presented the testimony of several witnesses, including C.V.'s aunts and grandmother, regarding C.V.'s lack of truthfulness. We are confident that similar testimony from R.B., who had credibility issues of her own, would not have tipped the scales in Rojas-Marceleno's favor. Accordingly, we affirm the district court's denial of the motion for new trial.

*We decline to address Rojas-Marceleno's general challenge to the sufficiency of the evidence to support his convictions.*

While Rojas-Marceleno challenges the sufficiency of the evidence to support his convictions, he fails to discuss any of the evidence presented at trial. Instead, he claims the evidence was insufficient to support his convictions because the district court dismissed some charges after the preliminary hearing and dismissed additional charges at the close of State's evidence. Based on Rojas-Marceleno's failure to adequately brief this issue, we deem it abandoned, and we decline to consider the sufficiency of the evidence. See *State v. McCaslin*, 291 Kan. 697, 709, 245 P.3d 1030 (2011) (An issue not briefed by the appellant is deemed waived and abandoned.).

*Rojas-Marceleno was not deprived of his statutory right to a unanimous jury verdict on his conviction of aggravated indecent solicitation of a child.*

Next, Rojas-Marceleno seeks reversal of his conviction for aggravated indecent solicitation of a child, arguing the district court instructed the jury on alternative means of committing the crime but the State failed to provide sufficient evidence to support both means. Specifically, Rojas-Marceleno contends the jury was instructed that it could find that the defendant either enticed or solicited C.V. to *commit* an unlawful sexual act or to *submit to* an unlawful sexual act and that these were alternative means of committing a crime under K.S.A. 21-3511(a). Rojas-Marceleno also

contends the district court clearly erred in failing to provide an unrequested unanimity instruction.

A criminal defendant has a statutory right to a unanimous jury verdict. See K.S.A. 22-3421; *State v. Wright,* 290 Kan. 194, 201, 224 P.3d 1159 (2010).

" 'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means. [Citations omitted.] In reviewing an alternative means case, the court must determine whether a rational trier of fact *could* have found each means of committing the crime proved beyond a reasonable doubt. [Citations omitted.]' " *State v. Timley,* 255 Kan. 286, 289, 875 P.2d 242 (1994).

Because jury unanimity is not required as to the means by which an alternative means crime is committed, unanimity instructions are not required in alternative means cases. See *State v. Bailey,* 292 Kan. 449, 458, 255 P.3d 19 (2011); *State v. Sanborn,* 281 Kan. 568, 569, 132 P.3d 1277 (2006) ("A unanimity instruction is used when the State charges one crime but relies on multiple acts to support that one crime.").

However, in *Wright* we clarified that in an alternative means case, we apply a super-sufficiency of the evidence—*i.e.,* the State must present sufficient evidence to permit a jury to find each means of committing the crime beyond a reasonable doubt. See *Wright,* 290 Kan. at 202-03. Thus, when the jury is instructed on alternative means of committing a single crime and the State fails to present sufficient evidence to support both means, reversal is required. *Wright,* 290 Kan. at 203, 205.

*Identifying alternative means*

Ordinarily, the first step in analyzing an alternative means case is to determine whether the case truly presents an alternative means issue. If so, the next step is to determine whether the evidence is sufficient to support each means alleged by the State and included in the jury instructions. See, *e.g., State v. Stevens,* 285 Kan. 307, 316-19, 172 P.3d 570 (2007) (concluding the crime of driving under the influence is an alternative means crime before

considering whether the evidence was sufficient to support both means).

Previously, we have described an alternative means offense as a single offense that may be committed in more than one way. But in *State v. Brown*, (No. 103,842, filed August 24, 2012), we recognized that this description, while straightforward on its face, has led to confusion and disagreement as applied. *Brown*, slip op. at 15.

In *Brown*, we clarified the test for identifying whether a statute contains alternative means. Namely, we held that " '[t]he mere use of a disjunctive in a statute does not an alternative means crime make.' " *Brown*, slip op. at 16 (quoting *State v. Peterson*, 168 Wash. 2d 763, 770, 230 P.3d 588 [2010]). Instead, in determining whether statutory alternatives are alternative means, we look primarily to the legislative intent and apply traditional rules of statutory construction in determining that intent. We explained:

"In examining legislative intent, a court must determine for each statute what the legislature's use of a disjunctive 'or' is intended to accomplish. Is it to list alternative distinct, material elements of a crime—that is, the necessary *mens rea*, *actus reus*, and, in some statutes, a causation element? Or is it to merely describe a material element or a factual circumstance that would prove the crime? The listing of alternative distinct, material elements, when incorporated into an elements instruction, creates an alternative means issue demanding super-sufficiency of the evidence. But merely describing a material element or a factual circumstance that would prove the crime does not, even if the description is included in a jury instruction. [Citations omitted.]" *Brown*, slip op. at 17.

Citing *Peterson*, 168 Wash. 2d at 771, this court in *Brown* identified "yet another consideration for determining if a statute provides alternative means." Slip op. at 19. Specifically, we noted a line of cases drawing a critical distinction between alternative means and "means within a means," and we adopted our own terminology for this scenario—*i.e.*, an "option within a means." We reasoned:

"An option within a means scenario is another important clue to legislative intent because such options signal secondary status rather than an intent to create a material, distinct element of the crime. Options within a means—that is, the existence of options that do not state a material, distinct element—do not demand

application of the super-sufficiency requirement [Citations omitted.]." *Brown*, slip op. at 20.

Finally, in *Brown* we summarized the analysis we will apply in alternative means cases:

"[I]n determining if the legislature intended to state alternative means of committing a crime, a court must analyze whether the legislature listed two or more alternative distinct, material elements of a crime—that is, separate or distinct *mens rea*, *actus reus*, and, in some statutes, causation elements. Or, did the legislature list options within a means, that is options that merely describe a material element or describe a factual circumstance that would prove the element? The listing of alternative distinct, material elements, when incorporated into an elements instruction, creates an alternative means issue demanding super-sufficiency of the evidence. Often this intent can be discerned from the structure of the statute. On the other hand, the legislature generally does not intend to create alternative means when it merely describes a material element or a factual circumstance that would prove the crime. Such descriptions are secondary matters—options within a means—that do not, even if included in a jury instruction raise a sufficiency issue that requires a court to examine whether the option is supported by evidence." *Brown*, slip op. at 23-24.

### *This case does not involve an alternative means issue*

Here, Rojas-Marceleno claims the crime of aggravated indecent solicitation of a child as defined in K.S.A. 21-3511(a) can be committed by alternative means because subsection (a) prohibits enticing or soliciting a child under the age of 14 to (1) commit an unlawful sexual act *or* (2) submit to an unlawful sexual act.

In support of the aggravated indecent solicitation charge, C.V. testified that on New Year's Eve she left her Aunt Maria's house to go to Rojas-Marceleno's house with Rojas-Marceleno, his wife, Jamie, and their kids. C.V. claimed that before Jamie got into the car to go to Rojas-Marceleno's home, Rojas-Marceleno told her not to fall asleep because he wanted to have sex with her after they got home and Jamie fell asleep. C.V. testified they did not have sex that night.

Clearly, there was no evidence that Rojas-Marceleno enticed C.V. to "commit" the act of rape; instead, the evidence was sufficient to establish only that he enticed or solicited her to "submit to" the act of rape. But if "commit to" and "submit to" are not alternative means under K.S.A. 21-3511(a), the lack of evidence

that Rojas-Marceleno enticed or solicited C.V. to commit the act of rape will not require reversal of the conviction. See *Wright*, 290 Kan. at 203, 205 (reversal required if State fails to present sufficient evidence to permit a jury to find each alternative means of committing the crime beyond a reasonable doubt).

To determine whether Rojas-Marceleno's conviction of aggravated indecent solicitation of a child is an alternative means crime, we must examine the language of relevant statute, K.S.A. 21-3511. The question of whether alternatives within a statute define alternative means or "an option within a means" is a question of law subject to de novo review. See *Brown*, slip op. at 17, 20-22.

At the time of Rojas-Marceleno's offense, K.S.A. 21-3511 provided:

"Aggravated indecent solicitation of a child is:
(a) Enticing or soliciting a child under the age of 14 years *to commit or to submit to* an unlawful sexual act; or
(b) inviting, persuading or attempting to persuade a child under the age of 14 years to enter any vehicle, building, room or secluded place with intent to commit an unlawful sexual act upon or with the child." (Emphasis added.)

The language of the charge and the jury instruction in this case were consistent with the language of the statute. The charge alleged Rojas-Marceleno violated K.S.A. 21-3511(a) and asserted

"that on, about or between the 31st day of December, 2007 and the 1st day of January, 2008, in Lyon County, Kansas, one Luis-Rojas Marceleno, then and there being, did unlawfully, feloniously and intentionally entice or solicit [C.V.] (DOB: [XX/XX]/1995), a child under 14 years of age, *to commit or submit to* an unlawful sex act, to-wit: rape/sexual intercourse." (Emphasis added.)

The jury was instructed in relevant part that the State was required to prove: "That the defendant enticed, solicited [C.V.] to commit, or submit to the act of rape." Further, during closing arguments, the State also advised the jury that the State had to establish "that the defendant enticed or solicited [C.V.] to commit or *submit to* the act of rape."

As defined in K.S.A. 21-3511(a), the gravamen of the crime of aggravated indecent solicitation of a child is the defendant's act of enticing or soliciting a child under age 14 to engage in an unlawful sexual act. This is true regardless of whether the defendant entices

or solicits the child to *commit* an unlawful sexual act or to *submit to* an unlawful sexual act. Thus, we conclude the terms "committing" or "submitting to" are merely "options within a means" and are not alternative means of committing the crime defined in K.S.A. 21-3511(a).

We note that while the charge and the jury instruction could have been more narrowly tailored to include only the factual circumstance at issue here—*i.e.*, that the defendant enticed or solicited C.V. to *submit to* an unlawful act, the overly broad charge and instruction did not deprive Rojas-Marceleno of his right to jury unanimity because the State presented no alternative means of committing the crime.

Additionally, contrary to Rojas-Marceleno's argument, he was not entitled to a unanimity instruction on the charge of aggravated indecent solicitation of a child because the State did not allege multiple acts. See *Sanborn*, 281 Kan. at 569 ("A unanimity instruction is used when the State charges one crime but relies on multiple acts to support that one crime.").

*The district court had jurisdiction to order restitution 30 days after imposing a lawful sentence.*

Rojas-Marceleno next contends the district court's restitution order must be vacated because the court did not enter the order until 30 days after sentencing. Citing K.S.A. 22-3424(d), Rojas-Marceleno maintains that once the district court imposes a lawful sentence, the court loses jurisdiction to modify the sentence except to correct arithmetic or clerical errors.

Whether the district court had jurisdiction is a question of law over which we exercise unlimited review. *State v. McDaniel*, 292 Kan. 443, 444-45, 254 P.3d 534 (2011). To the extent this issue requires interpretation of provisions of the Kansas Sentencing Guidelines Act or prior caselaw, our review is also unlimited. *McDaniel*, 292 Kan. at 444-45; *In re Care & Treatment of Miller*, 289 Kan. 218, 225, 210 P.3d 625 (2009).

After the parties filed their briefs in this case, we resolved this issue contrary to Rojas-Marceleno's position in *McDaniel*, 292 Kan. 443, Syl. ¶¶ 1, 2. There, we concluded K.S.A. 22-3424(d) applies

only when the crime victim or the victim's family seeks restitution and, even in those cases, the court is directed but not required to hold a restitution hearing before imposing sentence. 292 Kan. at 446 (agreeing with *State v. Bryant*, 37 Kan. App. 2d 924, 930, 163 P.3d 325, *rev. denied* 285 Kan. 1175 [2007], that the term "shall" in K.S.A. 22-3424[d] is directory rather than mandatory). We further concluded the district court did not alter the defendant's sentence at the postsentencing hearing but instead "merely completed it." 292 Kan. at 448.

Here, as in *McDaniel*, neither the victim nor the victim's family requested restitution. Instead, the State sought restitution in the amount of $269.32 to be paid to the Crime Victim's Compensation Board for services provided to C.V. As in *McDaniel*, both parties in this case understood and agreed that the amount of restitution would be determined within 30 days of sentencing. And, 30 days after sentencing the court signed a restitution order based on the amount sought by the State at sentencing.

Following *McDaniel*, we conclude the district court's restitution order did not alter or modify Rojas-Marceleno's sentence but merely completed it. Thus, we reject Rojas-Marceleno's claim that the court lacked jurisdiction to impose the restitution order.

Affirmed.