NOT DESIGNATED FOR PUBLICATION

No. 111,269

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHAEL ISERHARDT,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed October 16, 2015. Affirmed.

*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MALONE, C.J., MCANANY and ATCHESON, JJ.


*Per Curiam*: Michael Iserhardt appeals the Shawnee County District Court's denial of his untimely motion for habeas corpus relief from his plea of no contest to aggravated sexual battery and the resulting sentence. Iserhardt contends he was mentally incompetent to enter the plea—something he says both his lawyer and the district court taking the plea should have realized. After an evidentiary hearing on the habeas corpus motion, the district court concluded Iserhardt had failed to show manifest injustice excusing the requirement in K.S.A. 60-1507(f) that such motions be filed within 1 year

1

after the conclusion of direct proceedings in the criminal case. We find no error and affirm.

In late 2009, the Shawnee County District Attorney charged Iserhardt with one count of attempted rape, then a severity level 3 person felony violation of K.S.A. 21-3502, and aggravated sexual battery, then a severity level 5 person felony violation of K.S.A. 21-3518, arising from an incident more than 3 years earlier. The victim was a 20-year-old woman. Throughout the case, Iserhardt contended he and the woman had a consensual encounter. The victim consistently maintained otherwise.

Iserhardt's appointed lawyer worked out a plea arrangement with the district attorney under which Iserhardt would plead no contest to the lesser charged offense of aggravated sexual battery in exchange for dismissal of the attempted rape charge. In February 2010, Iserhardt did so. The district court taking the plea found Iserhardt knowingly and voluntarily decided to resolve the charges that way and adjudged him guilty of aggravated sexual battery based on the prosecutor's factual proffer establishing the elements of that offense.

In May 2010, the district court sentenced Iserhardt to 110 months in prison as a persistent sexual offender. At the sentencing hearing, Iserhardt personally addressed the district court to explain the incident had been consensual and to ask for leniency. Iserhardt filed no direct appeal, so the time for appellate review expired in mid-2010.

On July 3, 2012, Iserhardt filed a pro se motion under K.S.A. 60-1507 challenging the constitutional propriety of his conviction on various grounds, including his lack of competency during the plea hearing. The district court appointed a lawyer to represent Iserhardt on his 60-1507 motion. The lawyer later filed an amended motion alleging Iserhardt's counsel in the direct criminal case was constitutionally ineffective for not

2

investigating Iserhardt's mental health history and recognizing him to be incompetent at the plea hearing.

The lawyer also filed a motion to correct Iserhardt's sentence as illegal under K.S.A. 22-3504. The district court denied that motion, a ruling we have considered in a separate appeal. See *State v. Iserhardt*, No. 111,270 (this day decided) (Kan. App. 2015) (unpublished opinion). The challenge to the sentence has no particular bearing on the issue in this appeal.

We point out several other procedural or factual matters before getting to the substance of Iserhardt's claim. The lawyer representing Iserhardt in the direct criminal case did not testify at the 60-1507 hearing, nor did the victim of Iserhardt's assault. The district court judge hearing and ruling on the 60-1507 motion did not take Iserhardt's plea in the direct criminal case but did sentence him. So the judge actually saw Iserhardt and interacted with him in 2010.

As to the substantive issue, we start with some givens. If a criminal defendant is mentally incompetent in the sense that he or she does not understand the legal proceedings and cannot assist in them, he or she cannot enter a valid plea. A plea from an incompetent defendant violates the due process protections of the Fourteenth Amendment to the United States Constitution and must be set aside. See *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007); *United States v. Wingo*, 789 F.3d 1226, 1234-35 (11th Cir. 2015). A lawyer knowingly permitting an incompetent client to enter a plea leading to an adjudication of guilt almost certainly would have provided constitutionally inadequate representation under the Sixth Amendment to the United States Constitution.

Under K.S.A. 60-1507(f)(1), a movant must file for habeas corpus relief within 1 year after the termination of appellate jurisdiction over the direct criminal case. Iserhardt filed his petition past the 1-year limit. But the time bar may be excused "to prevent a

3

manifest injustice." K.S.A. 60-1507(f)(2). The movant bears the burden of proving grounds for relief by a preponderance of the evidence. Kansas Supreme Court Rule 183(g) (2014 Kan. Ct. R. Annot. 285). Accordingly, Iserhardt had to prove to the district court that granting his motion would avert a manifest injustice.

The Kansas Supreme Court recently outlined pertinent factors for determining whether claims made in an untimely 60-1507 proceeding establish manifest injustice to include:  (1) persuasive reasons for failing to file a timely motion; (2) substantial legal or factual grounds indicative of a claim "deserving of the district court's consideration" on the merits; and (3) a "colorable claim" of actual innocence. *Vontress v. State*, 299 Kan. 607, 616, 325 P.3d 1114 (2014). The ultimate determination of manifest injustice depends upon the totality of the circumstances of a given 60-1507 proceeding, and no one consideration controls the outcome. 299 Kan. at 616-17.

Dr. Robert W. Barnett, a clinical psychologist, examined Iserhardt and testified at the hearing on the 60-1507 motion. Dr. Barnett noted that Iserhardt suffered a traumatic head injury when he was 3 years old and the injury impaired his learning, social functioning, and comprehension. At the hearing, Dr. Barnett agreed Iserhardt's history and limited abilities should have "raised considerable flags" about his intellectual capacity to enter a plea and to grasp what was being asked of him in that process. According to Dr. Barnett, Iserhardt lacked the capacity to knowledgeably and understandably enter a plea without "a great deal of care . . . to properly orient" him to the proceeding. But Dr. Barnett also reported that Iserhardt could read at the high school level and displayed adequate language skills during the psychological testing and examination. On an IQ test Dr. Barnett administered, Iserhardt scored as mildly mentally retarded in areas other than verbal comprehension.

Iserhardt testified that he was under a great deal of stress around the time of the plea and in stressful environments his brain "shuts down." Iserhardt said the lawyer

4

representing him in the direct criminal case showed him the plea agreement just before the plea hearing and they never discussed it fully. According to Iserhardt, he answered "yes" to each of the district court's questions during the plea hearing simply as an "instinctive response." Iserhardt testified he really did not understand what he agreed to in the plea. Iserhardt's father also testified about Iserhardt's difficulty in understanding and taking directions. He said he discussed Iserhardt's limitations with the lawyer handling the direct criminal case.

The transcripts of the plea hearing and the sentencing are part of the appellate record, so we have reviewed them. At the plea hearing, Iserhardt told the district court he was 34 years old, had completed high school, and could read and write English. The transcript shows that Iserhardt answered a number of the district court's questions in the negative, such as whether he had been promised anything or threatened in some way to cause him to enter a plea. So contrary to Iserhardt's assertion during the 60-1507 hearing, he was not simply answering questions affirmatively as the result of a stressed-induced stupor or a mental impairment that left him incapable of discernment. During the plea hearing, Iserhardt agreed he had adequate time to consult with his lawyer and had no complaints about his legal representation. He also agreed that he had freely and voluntarily signed a written plea agreement outlining the reduction in charges, the maximum sentence, and rights he would be giving up by pleading no contest.

At the plea hearing, the district court covered a range of matters, including those in the written agreement, and in doing so set out a sufficient legal basis for accepting Iserhardt's plea. Iserhardt doesn't suggest otherwise. The hearing was conducted in a way that Iserhardt really had to answer only "yes" or "no" to the vast majority of the district court's questions and was not required to give any narrative responses. Nothing in the transcript indicates Iserhardt to have been incompetent or uncomprehending. His answers, though exceptionally short, were logically appropriate. And he did not engage in any tangential conversation, let alone musings that could be characterized as strange or

5

babbling. But a transcript would not capture unusually long pauses between question and answer, hesitancy or tentativeness in tone of voice, or other cues suggestive of uneasiness or confusion.

At the sentencing hearing, about 3 months later, Iserhardt personally made a pair of lengthy statements to the district court. In the first, he explained why he likely would be unable to reimburse the cost of his court-appointed lawyer if those fees were assessed against him. The explanation is logical and coherent. The district court wound up agreeing with Iserhardt and declined to assess the fees.

Second, Iserhardt made an extended statement to the district court about why he ought to be treated with leniency. As we have indicated, he admitted having sexual contact with the victim but insisted the activity was consensual. Iserhardt suggested the victim lied because she didn't want to upset her boyfriend. The presentation was direct and comprehensible—it did not display bizarre or disordered thinking, such as blaming CIA thought-control rays or space aliens. In making his presentation, Iserhardt clearly grasped the sentence he faced and suggested several lesser alternatives to the district court. As a tactical matter, Iserhardt may have done himself no favors by denying responsibility and painting the victim as a liar. The district court didn't go for it. But Iserhardt's statement undercuts any fair notion that he might have been legally incompetent at the sentencing.

When Iserhardt was transferred to the custody of the Kansas Department of Corrections shortly after his sentencing, he went through an evaluation to assist in placing him at a particular facility. The written report was admitted at the 60-1507 hearing and showed Iserhardt to have mild mental retardation and a borderline personality disorder with antisocial features. It did not indicate mental incompetence or a lack of orientation.

The district court concluded Iserhardt had failed to prove a manifest injustice excusing the untimely filing of the 60-1507 motion. The district court relied primarily on the transcript of the plea hearing, the Department of Corrections report, and Iserhardt's appearance and testimony at the 60-1507 hearing to conclude he was legally competent at the plea hearing. All of that would be circumstantial evidence supporting his competency to enter the plea. The district court found Iserhardt to be "appropriate in his demeanor" at the 60-1507 hearing and "articulate" and "appropriate in his word use in testifying." In short, the district court concluded nothing at the hearing indicated he might be or have been incompetent.

The district court also found Iserhardt's assertion that his encounter with the victim resulted in consensual sexual activity did not create a manifest injustice, since there was no particular reason to conclude a jury would necessarily find his version credible. While Iserhardt's version of the events would have provided a defense at trial had the jurors believed it, the district court correctly recognized such evidence does not in and of itself advance a claim of actual innocence and, thus, of manifest injustice in contrast to, say, a victim's recantation or compelling forensic evidence implicating someone other than a defendant who has disclaimed involvement in the crime. (Here, DNA evidence placed Iserhardt in the victim's presence and indicated a sexual encounter. But the evidence was neither especially inculpatory nor exculpatory, since Iserhardt admitted as much.) In his 60-1507 motion, Iserhardt identified by name witnesses he asserted would have testified to information calling the victim's credibility into question. He presented no evidence at the hearing pertaining to that assertion. Such evidence, however, fails to support a claim of actual innocence. See *Neer v. State*, No. 111,230, 2015 WL 1310815, at *4 (Kan. App. 2015) (unpublished decision); *Patterson v. Bartlett*, 56 Fed. Appx. 762 (9th Cir. 2002).

When reviewing the denial of a 60-1507 motion after a full evidentiary hearing, an appellate court accepts the district court's findings of fact to the extent that they are supported with substantial competent evidence. The appellate court exercises unlimited

review of the determinative legal issues. *Thompson v. State*, 293 Kan. 704, 715-16, 270 P.3d 1089 (2011); *Bellamy v. State*, 285 Kan. 346, 355, 172 P.3d 10 (2007).

We take the district court's statement that Iserhardt's "mental issues *at the time of the plea hearing* were not significant enough to show it would be manifestly unjust for the conviction to stand" to be a factual finding of competency. Although the determination is couched as a conclusion, it necessarily entails that factual finding. Without rehashing what has been laid out, there is ample evidence to support the finding, including the transcripts of the plea hearing and sentencing and the district court's observation of Iserhardt during the 60-1507 hearing. The district court implicitly discounted Dr. Barnett's ultimate opinion—which did not entail a conclusion that Iserhardt was, in fact, incompetent at the plea hearing but that he might have been. Again, the other evidence compiled at the 60-1507 hearing supports the district court's decision to give little weight to Dr. Barnett's opinion.

Those findings emphatically point against manifest injustice based on the merits of the 60-1507 claim, one of the factors expressly mentioned in *Vontress*. In other words, there isn't much in the way of evidence that Iserhardt was legally incompetent when he entered his plea. As to the other factors listed in *Vontress*, we have noted Iserhardt presented no evidence suggesting a substantial reason for his delay in filing the 60-1507 motion. So that also points against manifest injustice. Finally, as we have indicated, Iserhardt presented nothing advancing a substantial claim for actual innocence, the third factor. Nor did he offer evidence suggesting some other ground for manifest injustice in the direct criminal case. Accordingly, we agree with the district court that Iserhardt has failed to prove a manifest injustice excusing the 1-year time bar on 60-1507 motions. The motion, therefore, was properly dismissed as untimely. As a practical matter, we also necessarily conclude that Iserhardt has failed to prove he was legally incompetent when he entered his plea of no contest. Apart from the time bar, that claim fails on the merits, too.

8

As an alternative issue on appeal, Iserhardt contends the district court made insufficient findings in its written order denying the 60-1507 motion. He says the district court didn't comply with Rule 183(j) (2014 Kan. Ct. R. Annot. 287) because the order didn't include findings on "all issues presented" in his motion, specifically: (1) the lawyer's failure to investigate his mental capacity; (2) a conflict of interest; and (3) the lawyer's failure to call the witnesses who ostensibly would have impaired the victim's credibility. As Iserhardt acknowledges, the remedy on this issue would require a remand to the district court for additional findings. We conclude, however, the district court adequately addressed the points.

First, since Iserhardt was competent to enter a plea, the lawyer's failure to investigate his capacity—assuming there was a failure—made no difference. The district court's order necessarily recognized as much as a component of its ruling on manifest injustice. No specific finding was required. In his motion, Iserhardt simply stated "[a] conflict of interest was found in my case" without any elaboration. He presented no evidence at the 60-1507 hearing as to a conflict. The claim was abandoned, and the district court had no obligation to make any formal findings of fact about it. See *State v. Rojas-Marceleno*, 295 Kan. 525, 543, 285 P.3d 361 (2012) (claim not adequately briefed deemed abandoned). Although the district court did not directly address the potential witness testimony Iserhardt mentioned in his motion, he abandoned the point by not producing the witnesses at the hearing or at least offering sworn or attested statements from them. The secondhand assertions in the motion may have been sufficient to go forward, but they were not good enough at an evidentiary hearing.

Affirmed.

9